Argued and submitted April 14, 1986, affirmed in part, reversed in part and remanded March 11, reconsideration denied April 24, petition for review denied June 2, 1987
(303 Or 483)

# CITY OF ASHLAND,
*Appellant,*

*v.*

# HOFFARTH,
*Respondent.*

## (80-4372-J-2; CA A35913)

733 P2d 925

William A. Mansfield, Medford, argued the cause for appellant. With him on the briefs was Ronald I. Salter, Medford.

Thomas C. Howser, Ashland, argued the cause for respondent. With him on the brief was Cottle & Howser, Ashland.

Before Warden, Presiding Judge, and Van Hoomissen and Young, Judges.

YOUNG, J.

## YOUNG, J.

In this eminent domain action, plaintiff (the city) sought to acquire certain interests in defendant's property and to obtain a determination of just compensation for those interests. By a counterclaim, defendant asserted a right to compensation for a 20-foot-wide strip of land that he had previously dedicated to the city. The jury awarded more for the condemned property than the city had offered and granted defendant compensation for the 20-foot strip. The court then awarded defendant attorney fees on the condemnation claim and the counterclaim. The city appeals. We affirm the judgment on the condemnation claim but reverse as to the counterclaim and the award of attorney fees on that claim.

In 1981, the city commenced condemnation proceedings to acquire six easements and two narrow strips of land along Hersey Street in Ashland. It alleged that the property interests were worth $20,000. Defendant's second amended answer alleged that just compensation for those interests was $48,227.50. The counterclaim asserted that defendant was also entitled to compensation for the 20-foot strip that he had dedicated to the city in 1977, together with his reasonable attorney fees under ORS 20.085, which provides for reasonable attorney fees in inverse condemnation actions.

The jury awarded $35,225 as just compensation for the condemned property and an additional $6,840 on the counterclaim. The trial court, over plaintiff's objections, held that the counterclaim amounted to a proceeding in inverse condemnation and awarded defendant reasonable attorney fees on the counterclaim. The city appeals from the judgment and the fees awarded.

We first address the city's arguments relating to the condemnation claim. It argues that the trial court erred in overruling its objections to questions concerning defendant's plan to subdivide the condemned property. That argument is without merit. Just compensation for land taken is the fair market value of the land for its highest and best use. *Highway Comm. v. Superbilt Mfg. Co.*, 204 Or 393, 412, 281 P2d 707 (1955). Market value may be proved "by evidence of the use to which the land has been, and might reasonably be, adapted, including subdivision." *State Highway Com. v. Stumbo et al,* 222 Or 62, 66, 352 P2d 477 (1960); *see also Highway Com. v.*

*Assembly of God et al,* 230 Or 167, 176, 368 P2d 937 (1962).

■　　　The rule permitting evidence of the land's availability for subdivision is a limited one:

> " 'Evidence of the value of the property for any use to which it is reasonably adapted, is, as already stated, admissible, but such evidence must be limited to a bare statement why the property is adapted for a particular purpose and to testimony of its value for such purpose. As bearing upon these issues *the owner may offer a plan showing a possible scheme of development for the purpose for which it is most available, but he cannot* go further and describe in detail to the jury a speculative enterprise for which in his opinion or that of some expert the land might be used, and *base his estimate of value upon the profits which he would expect to derive from the enterprise.*' " *State Highway Com'n v. Deal et al,* 191 Or 661, 669, 223 P2d 242 (1951), *quoting 2 Nichols on Eminent Domain,* § 445 (2nd ed). (Emphasis supplied.)

Defendant's plan to subdivide the property was admissible to show that the land was suitable for that use. The questions asked only if such future plans existed; the expert did not base his estimate of the land's value on the profits which defendant would derive from the development. The trial court did not err in overruling the city's objections to the questions. *Cf. State Dept. of Transportation v. Jeans,* 80 Or App 582, 723 P2d 344, *rev den* 302 Or 342 (1986) (evidence of possible joint development venture too speculative to be admissible).

■　　　The city next contends that the trial court erred in denying its motion to strike certain valuation testimony by defendant's expert. The city failed to preserve that claim of error. A party must move to strike testimony as soon as the ground for the motion is disclosed. *McEwen v. Ortho Pharmaceutical,* 270 Or 375, 421, 528 P2d 522 (1974). Here, the ground for objection was disclosed at the latest on cross-examination of the expert. The city did not move to strike the testimony until after redirect examination. It was not error to deny the motion.

■　　　Finally, the city argues that the trial court erred in failing to instruct the jury that

> "in valuing property that is capable or reasonably adaptable for subdividing, you are not to determine the number of lots into which the property is capable of being subdivided and

multiply that number by the selling price per lot in order to determine the value of the whole parcel."

*See State Highway Comm. v. Deal et al, supra.* It is not error to refuse to give an instruction, however correct, on an abstract principle of law if the principle bears no relationship to the issues raised by the pleadings and proof. *R. J. Frank Realty, Inc. v. Heuvel,* 284 Or 301, 307, 586 P2d 1123 (1978). The *Deal* principle is irrelevant when, as here, there was no evidence of the selling price per lot.

We turn to the city's assignments of error concerning defendant's counterclaim. Defendant alleged that in June, 1977, he submitted a preliminary plat for the Grizzly Industrial Park Subdivision to the city and that the city agreed to approve the subdivision on the condition that he dedicate to the city a 20-foot-wide strip of land bordering Hersey Street for street purposes. He also alleged that, at that time, the city knew that condemnation proceedings were contemplated and that the City Administrator told him that there was a requirement that the city pay for "real property dedicated to the [city] within the five years prior to condemnation proceedings involving said property."

Although the administrator did not indicate the source of the requirement, he allegedly indicated that payment would come from federal funds. Defendant alleged that he would not have dedicated the strip to the city had he known that he would not be reimbursed for it and that, as a result of the city's representation, the city obtained possession of the 20-foot strip without providing just compensation. The city assigns error to the denial of its motion to dismiss the counterclaim for failure to state a claim. We hold that the counterclaim did not state a claim in inverse condemnation. Because defendant abandoned the contractual and unjust enrichment claims which he asserted in earlier pleadings, we need not determine whether he could have stated a claim under those theories.

In *Suess Builders v. City of Beaverton,* 294 Or 254, 656 P2d 306 (1982), the court described inverse condemnation:

" 'Inverse condemnation' is neither a constitutional nor a statutory term but only 'the popular description of a cause of action against a governmental defendant to recover the value of property which has been taken in fact by the governmental

defendant, even though no formal exercise of the power of eminent domain has been attempted by the taking agency.' *Thornburg v. Port of Portland,* 233 Or 178, 180 n 1, 376 P2d 100 (1963). Actions to recover compensation for such a governmental taking long preceded the label; *see, e.g., Morrison v. Clackamas Cty.,* 141 Or 564, 18 P2d 814 (1933). The United States Supreme Court has said that '[t]he phrase "inverse condemnation" appears to be one that was coined simply as a shorthand description of the manner in which a landowner recovers just compensation for a taking of his property when condemnation proceedings have not been instituted.' *United States v. Clarke,* 445 US 253, 257, 100 S Ct 1127, 63 L Ed 2d 373 (1980)." 294 Or at 258 n 3.

The three elements of an inverse condemnation claim are (1) a taking of private property (2) by an agency or subdivision of the state having the power of eminent domain, and (3) the property must be property that is subject to being taken for a public use. *Tomasek v. Oregon State Highway Commission,* 196 Or 120, 147, 248 P2d 703 (1952). The city concedes that the last two elements are present here and that the property was private and is to be used for a public use. The city argues only that defendant failed to allege facts sufficient to constitute a "taking."

■ Defendant asserts that he has stated "a cause of action in inverse condemnation by promissory estoppel." There is no such animal. Promissory estoppel is a basis for enforcing a promise despite a lack of consideration when the promisee has relied on the promise to his detriment. *Schafer et al v. Fraser et ux,* 206 Or 446, 468-72, 290 P2d 190, 294 P2d 609 (1955); *Restatement of the Law, Contracts,* § 90. "When those broad tests are met, justice generally requires the enforcement of the promise *through the medium of an appropriate contractual remedy." Schafer et al v. Fraser et ux, supra,* 206 Or at 472. (Emphasis supplied.) At best, defendant's counterclaim alleges a promise by the city to pay for the strip in the future and his reliance on that promise. The mere fact that as a result of the promise the city now owns the strip and defendant has not been paid does not show that there was a "taking." *Seuss Builders v. City of Beaverton, supra.* Defendant's remedy, if any, was contractual.

The city's final assignment of error is that the trial court erred in awarding attorney fees to defendant on the

counterclaim. Because we reverse on the counterclaim, the trial court on remand must make an award of attorney fees based on the condemnation action only.

Affirmed on the condemnation claim; reversed on the counterclaim; remanded for redetermination of attorney fees.