Argued and submitted July 19, 1991, reversed and remanded in part; otherwise affirmed February 26, reconsideration denied May 6, petition for review denied May 26, 1992 (313 Or 299)

Bobby L. CHANEY,
T.G.M. Oregon, Inc.; Ron Dufresne;
Dufresne's Auto Service, Inc.; Emad Al-Attrash;
Al-Attrash Trading Co.; Denny Bird;
Denny's Shell Service, Inc.; Bruce Chapman;
Bruce Chapman Company, Inc.; Gerald Cochran;
Courtesy Shell, Inc.; Thomas Doll;
Doll's Service Co., Inc.; Dwight Estby;
Dwight Estby Enterprises, Incorporated;
Dennis Johnson; Dennis R. Johnson Enterprises, Inc.;
Allen Olson; Norris Olson; Gordon Olson;
Olson Brothers Service, Inc.; Mark Saxe;
Mark Saxe's Automotive, Inc.; Ervin Roberson
and Robert Peck,
*Appellants,*

*v.*

SHELL OIL COMPANY,
*Respondent,*

*and*

PACIFIC NORTHERN OIL CORP.,
and Panoco, Inc.,
*Defendants.*

(A8903-01752; CA A65819)

827 P2d 196

David S. Shannon, Portland, argued the cause for appellants. With him on the briefs were Karen R. Tashima and Shannon and Johnson, P.C., Portland.

William N. Mehlhaf, Portland, argued the cause for respondent. With him on the brief was Markowitz, Herbold, Glade & Mehlhaf, Portland.

Before Warren, Presiding Judge, and Joseph, Chief Judge, and Edmonds, Judge.

EDMONDS, J.

**EDMONDS, J.**

Plaintiffs[1] appeal a judgment that dismissed their claims after the trial court granted defendant Shell Oil Company's (Shell) ORCP 21A(8) and summary judgment motions. ORCP 47. Shell cross-assigns error to the "implicit" denial of part of the motion for summary judgment. We affirm in part and reverse in part.

Plaintiffs make five assignments of error. For reasons that will become evident, we address the last three assignments first. In those assignments, plaintiffs assert that the court erred in granting Shell's motion for summary judgment on their first claim for breach of contract relating to issues of property maintenance, advertising, image, promotion and rent; their third claim for breach of a third party beneficiary contract; and their fourth claim for violation of the good faith provision of ORS 72.3050.[2] In a summary judgment proceeding, the moving party has the burden of showing that there are no genuine issues of fact and that it is entitled to judgment as a matter of law. We review the record in the light most favorable to the nonmoving party. ORCP

---

[1] All plaintiffs appeal. The trial court dismissed all except these plaintiffs below, because they had never contracted with Shell Oil Company: Bobby L. Chaney, Dufresne's Auto Service, Inc., Al-Attrash Trading Co., Denny Bird, Bruce Chapman, Gerald Cochran, Doll's Service Co., Inc., Dwight Estby Enterprises, Incorporated, Dennis R. Johnson Enterprises, Inc., Norris and Gordon Olson, Mark Saxe, Ervin Roberson and Robert Peck. Plaintiffs do not assign error to that dismissal.

[2] ORS 72.3050 provides, in relevant part:

"(1) The parties if they so intend can conclude a contract for sale even though the price is not settled. In such a case the price is a reasonable price at the time for delivery if:

"(a) Nothing is said as to price; or

"(b) The price is left to be agreed by the parties and they fail to agree; or

"(c) The price is to be fixed in terms of some agreed market or other standard as set or recorded by a third person or agency and it is not so set or recorded.

"(2) A price to be fixed by the seller or by the buyer means a price for the seller or buyer to fix in good faith."

Plaintiffs' fifth assignment of error refers to their *fifth* claim for relief. The pleadings show that the fifth claim for relief is for breach of an implied covenant of good faith and fair dealing. The fourth claim for relief is for violation of ORS 72.3050. In the discussion of the fifth assignment of error, plaintiffs refer to the trial court's granting of summary judgment on the fourth claim for relief. Therefore, we understand the assignment to be based on a ruling regarding the fourth claim for relief.

47C; *Seeborg v. General Motors Corp.*, 284 Or 695, 588 P2d 1100 (1978).

The facts in this and the next paragraph are uncontroverted. Plaintiffs are motor fuel dealers who were parties to franchise agreements with Shell under which they were authorized to occupy service station premises and to sell Shell brand motor fuel. In September, 1986, Shell and Panoco entered into an agreement whereby Panoco agreed to purchase real and other property from Shell. Pursuant to the agreement, Shell assigned the dealer agreements to Panoco and Panoco assumed Shell's obligations to the dealers in February, 1987.

■ By January 20, 1988, nine of plaintiffs' franchise agreements had expired, and each of those plaintiffs had entered into a new franchise agreement with Panoco. Of the four plaintiffs whose contracts had not expired by that date, three had entered into new contracts with Panoco before January 20, 1988;[3] the remaining plaintiff had assigned his interest in his franchise agreement.[4] On July 20, 1988, one of the plaintiffs' attorneys wrote a letter to Shell, advising it of "various claims for breach of contractual and legal obligations * * *." Plaintiffs thereafter filed this action, alleging multiple claims for relief arising out of their relationships with Shell and Panoco.

In support of its motion for summary judgment,[5] Shell asserted:

"2. Shell is entitled to summary judgment with respect to all of plaintiffs' claims since plaintiffs failed to provide Shell with timely notice of their claims as required by the Dealer Agreement between the parties.

[3] Chapman's contract had an expiration date of August 13, 1991. However, he entered into a similar contract with Panoco on May 30, 1987, and in 1990 he conveyed his interest in his station to a third party. Doll's contract had an expiration date of December 31, 1988. Before that contract expired, it entered into a new contract with Panoco on March 12, 1987. Roberson's contract had an expiration date of March, 1988, and he entered into a dealer contract with Panoco in May, 1987.

[4] Johnson's contract had an expiration date of December 21, 1988. However, in November, 1987, he assigned his franchise agreement.

[5] Before it moved for summary judgment, Shell filed two motions for dismissal under ORCP 21 and a motion for summary judgment under ORCP 47. The court granted Shell's motions in part. Plaintiffs amended their complaint three times.

"3. Under Oregon law, Shell's liability to the plaintiffs on all claims terminated either upon the expiration of the Shell-dealer agreements, or the execution of the new agreements between the dealer and Panoco, whichever occurred first."

The franchise agreements contain this clause:

"15. CLAIMS. * * * *Shell shall have no liability to Dealer for any other claim*, and dealer shall have no liability to Shell for any claim (except for indebtedness or relating to equipment) *arising out of or in connection with any sales or deliveries of products by Shell to Dealer hereunder, unless the claimant gives the other party notice of the claim (setting forth fully the facts on which it is based) within 180 days after the date of the sale, delivery or other transaction or occurrence giving rise to the claim.*" (Emphasis supplied.)

The trial court granted a partial summary judgment, ruling that the July 20, 1988, letter constituted notice of plaintiffs' claims under paragraph 15 and, accordingly, that they were barred under the agreements from making any claims that accrued before January 20, 1988. Plaintiffs do not assign that ruling as error.[6] Therefore, they must produce evidence that there were franchise agreements between them and Shell in existence after January 20, 1988, to afford a basis for their claims.

To prove the existence of the franchise agreements after January 20, 1988, plaintiffs rely on the provisions of the Petroleum Marketing Practices Act (PMPA), 15 USC § 2801 *et seq*. They argue that, because Shell did not comply with the requirements of PMPA for terminating its franchise relationships with them, its obligations continued after the dates on which the franchise agreements expired. Shell responds that, as a result of the new franchise agreements between plaintiffs and Panoco, all of which were executed before January 20, 1988, its liability was discharged.

---

[6] Plaintiffs disagree. They argue that they

"implicitly raised this issue in their first assignment of error as evidenced by the language of the trial court's order which states in part:

" 'IT IS HEREBY ORDERED THAT *all* claims stated against defendant Shell Oil Company *in paragraph 6(1) of plaintiff's [sic] complaint* are dismissed with prejudice and without leave to replead.' "

That argument fails. Plaintiffs' first assignment of error pertains to an ORCP 21A(8) order made by the trial court on the second day of trial.

Subchapter (1) of PMPA, 15 USC §§ 2801-2806, establishes the minimum standards for termination of petroleum franchises or nonrenewal of petroleum franchise relationships.[7] Section 2802(a) provides that, except as provided in subsection (b) of § 2802 and § 2803, no petroleum franchiser may:

"(1)    Terminate any franchise * * * prior to the conclusion of the term or the expiration date stated in the franchise; or

"(2)    Fail to renew any franchise relationship (without regard to the date on which the relevant franchise was entered into or renewed)."

Section 2802(b) provides that a franchiser may terminate any franchise or fail to renew any franchise relationship if certain notice requirements are met and if the termination is on the basis of specified grounds. If those requirements are not met, PMPA operates to perpetuate the franchise. *See* 15 USC § 2805; *Wirkkula v. Unocal*, 98 Or App 282, 780 P2d 223, *on reconsideration* 100 Or App 219, 785 P2d 372 (1989), *rev den* 310 Or 122 (1990).

PMPA did not prohibit Shell from assigning its obligations to Panoco, nor does it expressly provide that a

---

[7] PMPA defines a "franchise" as any contract (that is, any oral or written agreement, 15 USC § 2801(1)) between a refiner or distributor and a distributor or retailer that authorizes the use of a refiner's trademark or the occupation of leased marketing premises in connection with the sale, consignment, or distribution of motor fuel, or that relates to the supply of motor fuel. 15 USC § 2801(1). The term "franchise" also includes

"*the unexpired portion of any franchise* * * * which is transferred or assigned as authorized by the provisions of such franchise or by any applicable provision of State law * * *." 15 USC § 2801(1)(B)(iii). (Emphasis supplied.)

"Franchise relationship" is defined as

"the respective motor fuel marketing or distribution obligations and responsibilities of a franchisor and a franchisee which result from the marketing of motor fuel under a franchise." 15 USC § 2801(2).

PMPA defines a "franchisor" as

"a refiner or distributor (as the case may be) who authorizes or permits, under a franchise, a retailer or distributor to use a trademark in connection with the sale, consignment, or distribution of motor fuel." 15 USC § 2801(3).

It defines "franchisee" as

"a retailer or distributor (as the case may be) who is authorized or permitted, under a franchise, to use a trademark in connection with the sale, consignment, or distribution of motor fuel." 15 USC § 2801(4).

franchisor remains subject to its provisions after an assignment. *See* 15 USC § 2806(b).[8] We have not been cited to, nor are we able to find, any congressional history or cases that support plaintiffs' argument. Indeed, analogous cases suggest that PMPA determines a franchiser's obligations only so long as the franchise agreement is in existence under state law. *See Ackley v. Gulf Oil Corp.*, 726 F Supp 353, 360 n 9 (D Conn), *aff'd* 889 F 2d 1280 (2d Cir 1989), *cert den* 494 US 1081 (1990); *Rogue Valley Stations, Inc. v. Birk Oil Co.*, 568 F Supp 337 (D Or 1983). Although Shell's assignment of its dealer agreements to Panoco did not discharge its contractual obligations as long as the agreements were in existence, *Corvallis Etc. R. Co. v. Portland Etc. R. Co.*, 84 Or 524, 163 P 1173 (1917), once those agreements expired and plaintiffs had entered into the new agreements with Panoco, Shell's contractual and PMPA liability ended. Moreover, plaintiffs do not contend that Panoco failed to renew the agreements or comply with the termination provisions under PMPA. As to plaintiffs whose agreements with Shell had expired by January 20, 1988, the trial court did not err in granting summary judgment on the portion of the first claim for relief that is the subject of the third assignment of error, and the third and fourth claims for relief.

■ Plaintiffs Chapman, Doll's Service Co., Inc. (Doll), Roberson and Johnson had franchise agreements with Shell that, by their terms, expired after January 20, 1988. Johnson assigned his agreement in November, 1987. Thus, on this record, he cannot make a claim for any purported breaches that occurred after that date. *See Restatement (Second) Contracts* § 317 (1981); *see also* Calamari and Perillo, *Contracts* § 18-3, 725 (3d ed 1987). As to him, the court did not err in granting summary judgment to Shell on the portion of the first claim for relief that is the subject of the third assignment of error and the third and fourth claims for relief. We now address the third, fourth and fifth assignments of error as they apply to Chapman, Doll and Roberson.

---

[8] 15 USC § 2806(b) provides:

"*Nothing in this subchapter* authorizes any transfer or assignment of any franchise or *prohibits any transfer or assignment of any franchise* as authorized by the provisions of such franchise or by an applicable provision of State law which permits such transfer or assignment without regard to any provision of the franchise." (Emphasis supplied.)

■ Because Chapman, Doll and Roberson entered into new franchise agreements with Panoco before January 20, 1988, Shell argues that novations occurred and that, therefore, it is discharged from liability to them after that date. If Shell is correct, those three plaintiffs cannot prevail on their third, fourth and fifth assignments of error. Plaintiffs point to a conflict in the evidence in the summary judgment record as to whether the parties intended that Shell remain liable for the term of its contract or contemplated that the new franchise agreements with Panoco would become a substitution for the agreements with Shell. *See Credit Bureaus Adjustment Dept., Inc. v. Cox Bros.*, 207 Or 253, 258, 295 P2d 1107 (1956). We agree that, as to Chapman, Doll and Roberson, there is a genuine issue of material fact as to whether a novation occurred.

■ In their third assignment of error, plaintiffs assert that the trial court erred in granting Shell's motion for summary judgment on the portion of their first claim for relief for breach of contract relating to the issues of maintenance, image, promotion, rent and support services, which includes financing, because there is a genuine issue of fact as to whether Shell undertook those obligations.[9] They argue that Shell's written obligations do not reflect the entire agreement between the parties and that Shell's other obligations exist as a result of contemporaneous "representations." In their affidavits in support of their memorandum in opposition to Shell's motion, plaintiffs assert:

> "Shell and Panoco have always operated with the representation and understanding that they would undertake the responsibility to perform various maintenance, image, [and] promotion * * * obligations."

That, according to plaintiffs, implies the existence of agreements in addition to the leases and dealer agreements. Shell argues that, under a plain reading of its dealer agreements and motor fuel station leases, it did not assume any of the obligations that plaintiffs allege. Further, it argues that the

---

[9] Most of plaintiffs' first claim was disposed of by this grant of Shell's motion for summary judgment; later, the remainder of the claim, which alleged breach of a competitive pricing obligation, was dismissed on Shell's renewal of its ORCP 21A(8) motion at trial. That ruling is the subject of plaintiffs' first assignment of error, discussed *infra*.

integration clause in each agreement[10] bars plaintiffs from attempting to offer evidence regarding such obligations. *See Johnson v. Jeppe*, 73 Or App 430, 437, 698 P2d 1020 (1985).

Plaintiffs' affidavits say nothing about rent, support services or financing; therefore, no question of fact exists regarding those issues, and the trial court correctly granted Shell's motion for summary judgment regarding them. Even if the affidavits raise an issue of fact about the *existence* of collateral agreements regarding maintenance, image and promotion, the leases and the dealer agreements contain provisions concerning the parties' obligations regarding those subjects. Because plaintiffs' evidence does not controvert the integration clauses, evidence of other alleged agreements is inadmissible. ORS 41.740; *see Hatley v. Stafford*, 284 Or 523, 588 P2d 603 (1978). Therefore, as to Chapman, Doll and Roberson, the court did not err in granting summary judgment on this portion of plaintiffs' first claim.

■ In the fourth assignment of error, plaintiffs argue that the trial court erred in granting Shell's motion for summary judgment on their third claim for relief for breach of contract as third party beneficiaries of the agreement between Shell and Panoco. They assert that there is a question of fact as to whether the parties intended them to be creditor beneficiaries of the agreement. They rely on paragraph 8.4.2 of the agreement:

"Shell and [Panoco] have entered into a Jobber Agreement in a form and substance satisfactory to [Panoco] that will provide [Panoco] a source of support of motor fuels and other products to be distributed by * * * [Panoco] through the dealers and that will enable [Panoco] to satisfy the

---

[10] Article 26 of the dealer agreements provides:

"This Agreement, along with any related agreement(s) which may be executed contemporaneously herewith, comprises the entire agreement, and merges and supersedes all prior agreements, understandings, representations and warranties (oral or written, *express or implied*), between Shell and Dealer covering the sale and delivery of Shell products." (Emphasis supplied.)

Further, Article 17 of the station lease agreements provides, in part:

"This Lease terminates, as of the beginning date of its term, any prior lease by Shell to Lessee of the Premises and merges and supersedes all prior representations and agreements, and constitutes the entire contract between Shell and Lessee concerning the subject matter or in consideration hereof."

obligations assumed by [Panoco] in connection with this agreement."

Shell argues that plaintiffs have failed to prove that they were creditor beneficiaries of the Shell-Panoco agreement.

Oregon has adopted *Restatement of Contracts* § 133 (1932), which provides, in part:

"(1)   Where performance of a promise in a contract will benefit a person other than the promisee, that person is, except as stated in Subsection 3:

"* * * * *

"(b)   a creditor beneficiary if no purpose to make a gift appears from the terms of the promise in view of the accompanying circumstances *and performance of the promise will satisfy an actual or supposed or asserted duty of the promisee to the beneficiary * * *.*" (Emphasis supplied.)

*See, e.g., Johnston v. The Oregon Bank*, 285 Or 423, 591 P2d 746 (1979); *Northwest Airlines v. Crosetti Bros.*, 258 Or 340, 344, 483 P2d 70 (1971); *Aetna Casualty & Surety Co. v. OHSU*, 96 Or App 292, 773 P2d 1320 (1988), *aff'd* 310 Or 61, 793 P2d 320 (1990). In other words,

" '[t]he performance promised *must be one that will in fact discharge the promisee's* (or another party's) *obligation* to a third person; if it will not do this, the third person may be a creditor of the promisee but he is not a creditor beneficiary of the contract. * * *' " *Johnston v. The Oregon Bank, supra,* 285 Or at 431 (quoting 4 Corbin, *Contracts* § 787, at 102 (1951)). (Emphasis in original.)

When paragraph 8.2.4 is read with the assignment provisions of the contract, it is inferable that Shell promises to supply fuel to Panoco and Panoco promises to assume Shell's obligations under Shell's franchise agreements with plaintiffs. If Panoco performs as promised, Shell's obligations under the agreements will be discharged. Accordingly, we conclude that the agreements between Panoco and Shell raise a question of fact as to whether plaintiffs were creditor beneficiaries. The court erred in granting Shell's motion for summary judgment on the third claim for relief as to Chapman, Doll and Roberson.

■      In the fifth assignment of error, plaintiffs argue that the trial court erred in granting summary judgment to Shell

on their fourth claim for relief for violation of the good faith provision of the agreements under ORS 72.3050(2). The gist of that claim is that Shell failed to fix the price of motor fuel in good faith. A party opposing a motion for summary judgment may not rest on the allegations in that party's pleadings but must, by affidavit or otherwise, set out specific facts to refute the moving party's showing that a material fact is conclusively established. *Bostick Family Trust v. Magliocco*, 64 Or App 305, 667 P2d 1044 (1983). Plaintiffs did not offer any evidence that shows that Shell breached the obligation of good faith. The trial court did not err in granting a summary judgment on the fourth claim for relief.

■ We now consider the first two assignments of error. Plaintiffs argue that the trial court erred in granting Shell's ORCP 21A(8) motions for dismissal of paragraph 6(1) of their breach of contract claim and all of their claim for relief for breach of the implied covenant of good faith and fair dealing. Shell argues that the franchise agreements are unambiguous and do not establish the duties alleged by plaintiffs. As to plaintiffs other than Chapman, Doll and Roberson, dismissal could not be prejudicial error in the light of the fact that no franchise agreement with Shell existed after January 20, 1988, under which they could claim that a breach had occurred.

■ We must address the assignments separately as they apply to Chapman, Doll and Roberson. We begin with the first assignment of error, which concerns part of the first claim for relief for breach of contract. Paragraph 5(1) of that claim alleges that, under the franchise agreements, Shell agreed to set its dealer tankwagon price in order to sell to plaintiffs at a competitive price. Paragraph 6(1) alleges that Shell breached that agreement. In determining whether it was error to grant an ORCP 21A(8) motion, we look only at the face of the complaint and any reasonable inferences that arise therefrom. *Oskenholt v. Lederle Laboratories*, 294 Or 213, 215, 656 P2d 293 (1982). As to Chapman, Doll and Roberson, paragraphs 5(1) and 6(1) of the first claim suffice to defeat an ORCP 21A(8) motion, because they allege that there was an agreement and that it was breached.

■ Next, we address the second assignment of error regarding the fifth claim for relief for breach of an implied

covenant of good faith and fair dealing. At the outset, we note that the fifth claim contains six specific allegations of breach. Of the six, five relate to events that occurred before January 20, 1988. See the discussion regarding plaintiffs' lack of timely notice, *supra*, 111 Or App at 561. Therefore, any error in dismissing those claims was harmless. The remaining allegation says:

> "Under the agreement between plaintiffs and defendants there exists a special relationship by which Shell attempted to reserve for itself the discretion to make numerous decisions affecting the relationship, including establishing the plaintiffs' purchase price for motor fuel, station rentals, company operated interest, repair and maintenance, determining the location of Shell franchises so as not to interfere with the best efforts of plaintiffs or Shell, and including the discretion to assign its interests and delegate its duties and obligations. Shell expected plaintiffs to trust and place confidence in Shell to exercise this discretion to the mutual benefit and profitability of both Shell and the plaintiffs. Shell failed to act in good faith, abused its discretion, usurped the benefit of the bargain and interfered with the plaintiffs' ability to derive the benefits from the agreement with Shell in * * * the following:
>
> "* * * * *
>
> "3)   By failing and neglecting to oversee Panoco's fulfillment of the duties and obligations assumed and Shell's contractual performance."

Plaintiffs argue that Shell's breach of a good faith covenant occurred when it assigned its franchise obligations to Panoco, knowing that Panoco would be unable to perform them. Shell argues that, under *Best v. U. S. National Bank*, 303 Or 557, 739 P2d 554 (1987), the trial court correctly granted its motion to dismiss, because the complaint does not allege facts regarding the reasonable expectation of the parties.

In *Best*, the court discussed the common law test for good faith and sought to effectuate the reasonable contractual expectations of the parties. However, the franchise agreements in this case are governed by ORS chapters 71 and 72.[11] The legislature intended that the UCC statutory definition of "good faith" replace the common law definition. *U. S.*

---

[11] ORS 71.2030 provides:

*National Bank v. Boge*, 311 Or 550, 814 P2d 1082 (1991). ORS 72.1030(1)(b) provides:

> " 'Good faith' in the case of a merchant means honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade."

That definition includes a "subjective" (honesty in fact) and an "objective" component (observance of reasonable commercial standards). Bailey, *Oregon Uniform Commercial Code* 22, § 1.12 (2d ed 1990). The objective component encompasses "fair dealing." *U. S. National Bank v. Boge, supra,* 311 Or at 566. To state sufficient facts to constitute a claim for breach of a good faith duty under ORS chapter 72, the claim must allege facts that fall within either component.

Plaintiffs' claim does not allege that Shell acted in a dishonest manner; therefore, it fails as an allegation of a breach of Shell's duty of objective good faith. However, allegation 3, when read in context with the introductory language, suffices to allege that Shell was obliged to and breached its duty to oversee Panoco's performance of Shell's assigned contractual obligations. Therefore, assuming the truth of the allegations and the inferences that may be drawn therefrom, that breach was contrary to plaintiffs' reasonable contractual expectations. Allegation 3 sufficiently alleges a breach of Shell's duty of subjective good faith. As to Doll, Chapman and Roberson, then, the court erred in granting Shell's motion to dismiss the third specific allegation in the fifth claim for relief.

Last, we address Shell's cross-assignment of error:

> "Following Shell's motion for summary judgment on all of plaintiffs claims, * * * the trial court erred in implicitly denying the motion as to paragraph 6(1) of plaintiffs' claims for relief."

The trial court denied Shell's motion for summary judgment regarding paragraph 6(1) on April 2, 1990. It subsequently struck paragraph 6(1) on Shell's ORCP 21A(8) motion and entered the judgment of dismissal of plaintiffs' claims. Shell did not file a cross-appeal. However, because it does not

---

"Every contract or duty within the Uniform Commercial Code imposes an obligation of good faith in its performance or enforcement."

contend that the judgment is in error, none was required. *Artman v. Ray*, 263 Or 529, 501 P2d 63 (1972).

Even assuming that the denial of Shell's motion is reviewable, *see, e.g., Cochran v. Connell*, 53 Or App 933, 632 P2d 1385, *rev den* 292 Or 109 (1981), the record before us does not establish that there are no disputed questions of material fact concerning the meaning of Shell's agreement. The trial court did not err in "implicitly" denying Shell's motion for summary judgment as to paragraph 6(1) of plaintiffs' first claim for relief for breach of contract.

As to Chapman, Doll's Service Service Co., Inc., and Roberson, reversed and remanded on the first allegation of breach in the first claim for relief, on the third claim for relief and on the third allegation of breach in the fifth claim for relief; otherwise affirmed.