10 F.3d 808
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Emad AL-ATTRASH; Bobby L. Chaney; Gerald Cochran; Denny's
Shell Service, Inc.; Doll's Service Company, Inc.;
Dufresne Auto Service, Inc.; Dwight Estby; Dennis R.
Johnson, Enterprises, Inc.; Gordon Olson; Robert Peck;
Ervin Robertson, Plaintiffs-Appellants,
v.
SHELL OIL COMPANY, a Delaware corporation, Defendant-Appellee.
Emad AL-ATTRASH; Bobby L. Chaney; Gerald Cochran; Denny's
Shell Service, Inc.; Doll's Service Company, Inc.;
Dufresne Auto Service, Inc.; Dwight Estby; Dennis R.
Johnson, Enterprises, Inc.; Gordon Olson; Robert Peck;
Ervin Robertson, Plaintiffs-Appellees,
v.
SHELL OIL COMPANY, a Delaware corporation, Defendant-Appellant.
 Nos. 92-35468, 92-36601.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 2, 1993.
Decided Nov. 26, 1993.
 
 1
 Before: REINHARDT, BRUNETTI and FERNANDEZ, Circuit Judges
 
 
 2
 MEMORANDUM*
 
 
 3
 Plaintiffs, who are current or former operators of Shell service stations, appeal the entry of summary judgment dismissing their state law claims against Shell Oil Company ("Shell"). Shell appeals the denial of attorney fees. We affirm.
 
 BACKGROUND FACTS
 
 4
 Shell formerly owned the Shell brand service stations in the Portland metropolitan area. Shell leased the stations and supplied gasoline and other products to plaintiffs under a franchise arrangement. In 1986, Shell transferred to Panoco, Inc. ("Panoco") its entire interest in the service station franchises (the "Purchase Agreement"). Shell and Panoco also executed a Jobber Contract, pursuant to which Panoco agreed to purchase Shell products for resale to plaintiffs.
 
 
 5
 In order to operate profitably, Panoco had to obtain gasoline from Shell at a price which would allow it and its dealers to compete with direct dealers. Panoco claimed that Shell was aware that it was a jobber competing in a direct market, yet Shell failed to set a competitive price for gasoline. Plaintiffs, as Panoco's assignees, filed this action against Shell, asserting claims for breach of contract, breach of the duty of good faith, and violations of the Oregon Motor Fuel Franchise Act.
 
 DISCUSSION
 
 6
 A. Breach of Contract and Breach of Duty of Good Faith
 
 
 7
 The magistrate judge held that plaintiffs' claims for breach of contract and breach of the duty of good faith were waived because Panoco failed to give notice of the breaches to Shell in the manner required by the Jobber Contract.
 
 1. Requirement of Notice
 
 8
 The Jobber Contract does not expressly state what Panoco must do when it believes that the price charged by Shell violates the Contract. However, the Jobber Contract is subject to the Oregon Commercial Code. See Or.Rev.Stat. Sec. 72.1020. The Commercial Code contains a general requirement of notice when goods have been accepted. Id. Sec. 72.6070(3)(a). This notice requirement is from the Uniform Commercial Code. That provision has been held applicable when a buyer claims that the price charged is inconsistent with the contract price. Roth Steel Prod. v. Sharon Steel Corp., 705 F.2d 134, 151-53 (6th Cir.1983). Section Sec. 72.6070(3)(a) refers to any breach, not simply to a defect in the goods, and bars any remedy if notice is not given. See Eastern Air Lines, Inc. v. McDonnell Douglas Corp., 532 F.2d 957, 970-73 (5th Cir.1976) (Sec. 2-607 applied to delivery delays). The purposes of notice are to enable the seller to investigate, to correct the problem and to minimize damages. See Metro Inv. Corp. v. Portland Road Lumber Yard, Inc., 501 P.2d 312, 314 (Or.1972); 1 James J. White & Robert S. Summers, Uniform Commercial Code Sec. 11-10 at 554-59 (3d ed. 1988). These purposes are just as well served by requiring notice when the buyer claims that the price is nonconforming as when the buyer claims that the quality or quantity of the goods is nonconforming. Similarly, notice is also required when the buyer asserts that the seller has breached the duty of good faith. See Chaney v. Shell Oil Co., 827 P.2d 196, 199 (Or.Ct.App.), review denied, 832 P.2d 455 (Or.1992). The magistrate judge did not err in holding that Or.Rev.Stat. Sec. 72.6070(3)(a) required that Panoco give notice to Shell of its claims that the price violated the contract and that Shell breached its duty of good faith.
 
 2. Form of Notice
 
 9
 Plaintiffs contend that if notice of a price breach is required by the Oregon Commercial Code, then the sufficiency of notice must be judged under the Code, rather than by the standard in the notice provision of the Jobber Contract, section 21.
 
 
 10
 However, parties may modify the requirements of the Commercial Code. Or.Rev.Stat. Sec. 71.1020(3). The notice provision in the Jobber Contract indicates that the parties intended that every notice would be sent by certified mail, telegram or telex, except when the Jobber Contract expressly provided otherwise.[1] That is the sensible reading of the Contract. It helps distinguish grumbling from claims of breach and is just the kind of provision that parties often adopt to avoid the difficulties caused by ambiguous actions.
 
 
 11
 Next, plaintiffs contend that Sec. 21 is ambiguous. A contract is ambiguous when the writing is "not so clear as to preclude doubt by a reasonable man of its meaning." Bartlam v. Tikka, 622 P.2d 1133, 1135 (Or.Ct.App.), review denied, 642 P.2d 307 (Or.1981) (internal quotation omitted). Section 21 governs "every notice hereunder (except when otherwise specified and subject to any requirements of law)." Plaintiffs claim that "hereunder" refers only to notices expressly required by the Jobber Contract. That would be a peculiar reading. Any reasonable person would understand that when notice must be given of alleged problems or issues arising under the Jobber Contract, Sec. 21 must be followed unless another provision of the Contract or the law requires otherwise. In other words, "hereunder" means "under this Contract." Because it is undisputed that Panoco did not give notice in the form required by Sec. 21, the magistrate judge properly entered judgment for Shell on plaintiffs' breach of contract and breach of good faith claims.[2]
 
 3. Effect of Actual Knowledge of Claim
 
 12
 Plaintiffs argue that even if they failed to comply with the notice provision of the Jobber Contract, Shell's actual knowledge of Panoco's dissatisfaction with the price excuses that failure. Plaintiffs first raised this legal theory in their motion for reconsideration. The magistrate judge did not abuse his discretion in refusing to consider it because it was untimely. See Northwest Acceptance Corp. v. Lynnwood Equip., Inc., 841 F.2d 918, 925-26 (9th Cir.1988).
 
 B. Motor Fuel Franchise Act
 
 13
 Judgment was entered on plaintiffs' claims under the Oregon Motor Fuel Franchise Act ("MFFA"), Or.Rev.Stat. Secs. 650.210(2), 650.245, 650.250, on the ground that the MFFA was not applicable to contracts which predated its effective date, January 1, 1988.
 
 
 14
 Generally, "statutes other than those which are procedural or remedial in nature are applied only prospectively in the absence of direction to the contrary." Joseph v. Lowery, 495 P.2d 273, 274 (Or.1972); see Lincoln v. Kolski, 651 P.2d 197, 199 (Or.Ct.App.), review denied, 656 P.2d 943 (Or.1982). The MFFA is silent regarding the Legislature's intent that it apply retroactively. Plaintiffs' only argument is that the MFFA regulates conduct, not contracts, and therefore should apply to Shell's conduct after January 1, 1988.
 
 
 15
 This argument ignores the fact that Panoco and Shell were conducting themselves pursuant to a contract. Apart from the relationship created and sustained by that contract, Shell would not engage in any conduct with respect to Panoco. Plaintiffs' position also ignores the analysis utilized by Oregon courts in determining the retroactivity of a statute. A statute which impairs existing rights, creates new obligations, or imposes additional duties with respect to past transactions will not be applied retroactively. See Joseph, 495 P.2d at 274-75. Although some provisions of the MFFA duplicate common law duties, which regulate conduct, see Or.Rev.Stat. Secs. 650.215, 650.245, other provisions are specific to the service station franchise relationship and cannot be negated by contract. See Or.Rev.Stat. Secs. 650.220 to .235. For example, the Jobber Contract contains provisions restricting Panoco's right to assign the contract which are contrary to the provisions of Secs. 650.220 to .235. In addition, Sec. 650.250 imposes a new obligation to pay attorney fees to the prevailing party in a suit under the MFFA.
 
 
 16
 The MFFA creates new obligations and imposes additional duties upon franchisors. Thus, the MFFA is a "substantive" statute which applies prospectively only. See Joseph, 495 P.2d at 274-75. At any rate, to the extent that the MFFA required good faith on Shell's part, it adds no weight to plaintiffs' claim. That was already required by law.
 
 C. Attorney Fees
 
 17
 Under Oregon law, the court may award attorney fees only if a statute or contract provides for fees. See Niedermeyer v. Latimer, 769 P.2d 771, 772-73 (Or.1989); Or.Rev.Stat. Sec. 20.096. Attorney fees based on contract may be awarded only when a plaintiff seeks to enforce the contract. Id.; Gruver v. Midas Int'l Corp., 925 F.2d 280, 283-84 (9th Cir.1991).
 
 
 18
 Shell requested attorney fees pursuant to Sec. 12.10 of the Purchase Agreement. The Jobber Contract does not contain a provision for attorney fees. Shell argues that plaintiffs sued to enforce both the Purchase Agreement and the Jobber Contract.
 
 
 19
 The Complaint is ambiguous with respect to which agreement which has been breached. However, the Purchase Agreement relates to the acquisition of Shell's real property, equipment and contracts. The Jobber Contract governs the parties' long-term relationship concerning the supply and purchase of petroleum products. The Purchase Agreement contains some precatory language which refers to Shell's withdrawal from the direct market and Panoco's position as a jobber competing in a direct market, but it does not contain any provision determining the price to be charged for gasoline under the Jobber Contract. The Purchase Agreement contains an integration clause which provides that the contract is fully integrated and there is no other agreement. So does the Jobber Contract.
 
 
 20
 The magistrate judge did not err in concluding that plaintiffs sued to enforce the Jobber Contract and that the action was not "in connection with any controversy arising out of" the Purchase Agreement. The action had nothing to do with the underlying purchase of Shell's interest in the service stations; it was based solely on Shell's performance of the Jobber Contract. If the parties wanted a right to attorney fees for breaches of the Jobber Contract which did not amount to a breach of the Purchase Agreement, they could have provided for that in the integrated Jobber Contract. Shell's request for contractual attorney fees was properly denied.
 
 
 21
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 In support of the motion for reconsideration, plaintiffs submitted additional evidence relevant to Panoco's intent concerning the notice provision in the Jobber Contract. The magistrate judge did not abuse his discretion in disregarding that evidence because it was available and not presented at the time of summary judgment. Hopkins v. Andaya, 958 F.2d 881, 887 n. 5 (9th Cir.1992)
 
 
 [2]
 It is questionable that Panoco gave any notice at all of a claimed breach, as opposed to notice of difficulties in living under the existing contract, but that is an issue we need not, and do not, reach