**Marshall L. JOHNSON, Plaintiff,**

v.

**AMOCO OIL COMPANY, Defendant.**

**Civ. A. No. 91–1800 SSH.**

United States District Court,
District of Columbia.

April 21, 1992.

**336**

Harry C. Storm, Bethesda, Md., for plaintiff.

Daniel F. Attridge, Ann E. Barlow, Kirkland & Ellis, Washington, D.C., for defendant.

## OPINION

STANLEY S. HARRIS, District Judge.

This case arises out of a dispute concerning a petroleum franchise relationship in Washington, D.C. This court has subject matter jurisdiction pursuant to the Petroleum Marketing Practices Act (PMPA), 15 U.S.C. § 2805(a), and 28 U.S.C. § 1331. Plaintiff alleges pendent jurisdiction for his state claims.

Plaintiff alleges violations of the PMPA and common law breaches of contract. Now before the Court is defendant's motion for summary judgment. For purposes of this motion, the Court accepts plaintiff's version of the facts. For the reasons set forth below, defendant's motion for summary judgment is granted as to Counts I and II, and the remaining state law claims are dismissed for lack of subject matter jurisdiction.

## BACKGROUND

Plaintiff, Marshall L. Johnson, was an Amoco dealer at 2712 Bladensburg Road, Washington, D.C., from 1981 to February 1990. Johnson operated the Bladensburg Road station under various three-year agreements with defendant Amoco Oil Company (Amoco). The most recent agreement was for the period February 10, 1987, to February 28, 1990. The franchise for this station was cancelled in February 1990. Early that same month, plaintiff entered into a new and separate franchise relationship for an Amoco station located at 4429 Wheeler Road, Oxon Hill, Maryland.

Plaintiff alleges that, in 1988, defendant told plaintiff that his Bladensburg Road station would be renovated and requested his assistance in obtaining the necessary building permits. According to plaintiff, in reliance upon Amoco's promise to improve his station, he assisted defendant in securing such permits. Amoco shipped new equipment to the station, but did not proceed with the renovations.

About November 1988, Amoco acquired a service station located at 4925 South Dakota Avenue, N.E., and in close proximity to the plaintiff's Bladensburg Road station. Amoco transformed this newly-acquired station into a modernized service station known in the industry as a "pumper." About August 1989, an independent dealer began operating the pumper under contract with Amoco.

Plaintiff alleges that Amoco granted the pumper's dealer substantial rent concessions during the first few months of operation. According to plaintiff, such rent concessions allowed the pumper's dealer to sell gasoline at a cheaper price than plaintiff, resulting in plaintiff's losing considerable business to the pumper. Furthermore, plaintiff claims that defendant knew and intended that plaintiff lose business to the pumper.

Some months after the pumper opened, in December 1989, plaintiff claims that Amoco verbally advised him that his dealership would be closed in the next few weeks. Amoco's representatives told plaintiff that he could choose to be moved to one of two other Amoco-owned locations. Plaintiff asserts that he did not want to move from his

Bladensburg Road location because he feared losing the neighborhood customers of his station's automotive repair business—customers he had spent the previous ten years cultivating and serving. Plaintiff claims that he told defendant he did not want to leave his Bladensburg Road station. He claims that Amoco did not give him a reason for closing the Bladensburg Road station. Plaintiff also alleges that Amoco did not inform him that his franchise relationship was being changed in any way, other than that he would soon no longer have a dealership for the Bladensburg Road location.

Plaintiff further claims that Amoco presented the opportunity to operate another location as a "take it or leave it" deal—take one of these locations or have no dealership at all. In December 1989, plaintiff chose the Wheeler Road location, located in what plaintiff characterizes as a crime-ridden area of Prince George's County, over the other Amoco-owned location, which was a closed station in a drug-ridden area of Washington, D.C. Amoco's representatives told plaintiff "not to worry," that the Wheeler Road station would be a better location, that although the Wheeler Road facility had been closed for several months, the previous dealer had enjoyed a good automotive repair business, that the Wheeler Road station's gasoline volume would generate greater profits than the Bladensburg Road station, and that the station would be modernized by way of painting, lighting, and a security booth.

Amoco told plaintiff to vacate the Bladensburg Road station by early February. On February 7, 1990, plaintiff began operating at Wheeler Road. On February 28, 1990, plaintiff signed a mutual cancellation agreement concerning his Bladensburg Road franchise. Plaintiff concedes that he signed the agreement, but claims that because he had signed several mutual termination agreements during the course of his franchise relationship each time an old agreement expired and a new one commenced, he found nothing "unusual" about being asked to sign this particular agreement.

Plaintiff alleges that he did not receive a copy of the mutual cancellation agreement as the law requires. However, the last paragraph of the agreement, just above plaintiff's signature, states: "The undersigned **Dealer** hereby acknowledges that he has received a copy of this document and the Department of Energy 'Summary of Title 1 of the Petroleum Marketing Practices Act' on the date specified under his signature below."

Between February 7, 1990, and December 1990, plaintiff asserts that he tried in vain to turn his Wheeler Road franchise into a business comparable to that which he had established at his Bladensburg Road location. He claims he was frustrated in his efforts by Amoco's failure to improve his Wheeler Road facility as promised. Additionally, after moving to the Wheeler Road facility, he lost former customers and key employees of his Bladensburg Road dealership, resulting in the loss of significant profits.

According to plaintiff, in late 1990, he began to realize that the Wheeler Road dealership would never be comparable to his former Bladensburg Road franchise. He suffered a stroke in December of 1990 which prevented him from taking any action until at least the end of February 1991. On July 23, 1991, he filed this suit.

## DISCUSSION

*Petroleum Marketing Practices Act—Counts I and II*

In Count I, plaintiff alleges that defendant unlawfully terminated his Bladensburg Road franchise and failed to comply with strict notice requirements in violation of the PMPA. First, plaintiff alleges that when he signed the mutual cancellation agreement, he was not given a copy of it or his PMPA rights, as the law requires. Second, plaintiff asserts that the PMPA's notice provisions were violated when defendant failed to provide plaintiff with 90 days notice of intent to terminate and the reasons for termination. Third, plaintiff alleges that the mutual termination agreement was executed after Amoco told him to leave the Bladensburg Road facility and

that the subsequent agreement cannot cure a preceding wrongful termination.

Defendant Amoco has denied that its representatives verbally advised plaintiff that his franchise would be terminated in December 1989. Amoco has sought summary judgment with regards to Count I on two grounds. First, Amoco asserts that the mutual cancellation agreement executed by the parties met the standards of the PMPA; thus, there was no violation of the PMPA's termination provisions. Moreover, according to defendant, there was no violation of the PMPA's notice provisions because the notice requirements do not apply when franchises are mutually terminated. Second, Amoco argues that even if there was a violation of the PMPA, plaintiff's claim is barred by the PMPA's one-year statute of limitations.

Even assuming that there is a genuine issue of material fact concerning violations of the PMPA, this Court finds that plaintiff's claims under Count I are barred by the PMPA's one-year statute of limitations period. Under the PMPA, an action for wrongful termination must be filed within a year after the later of (1) the date of termination or (2) the date the franchisor fails to comply with the termination provisions of Section 2802. *See* 15 U.S.C. § 2805(a).

■ Given that plaintiff's Bladensburg Road facility was closed no later than the day the parties signed the mutual cancellation agreement, the one-year limitations period began running no later than February 28, 1990. Because plaintiff failed to file this action until July 23, 1991, his claim is time-barred. Plaintiff argues that Amoco fraudulently concealed the wrongful termination of his franchise such that the doctrine of equitable tolling should apply to toll the PMPA's one-year limitations period. However, for the doctrine of equitable tolling to apply, there must be both fraudulent concealment on the part of defendant and

reasonable diligence on the part of plaintiff to discover his claim. *See Hobson v. Wilson,* 737 F.2d 1, 34–35 (D.C.Cir.1984), *cert. denied,* 470 U.S. 1084, 105 S.Ct. 1843, 85 L.Ed.2d 142 (1985).

Fraudulent concealment occurs when a defendant engages in "some misleading, deceptive or otherwise contrived action or scheme, in the course of committing the wrong, that is designed to mask the existence of a cause of action." *Id.* at 34. "Concealment by mere silence is not enough. There must be some trick or contrivance intended to exclude suspicion and prevent inquiry." *Id.* at 33 (quoting *Wood v. Carpenter,* 101 U.S. 135, 143, 25 L.Ed. 807 (1879)).

■ According to plaintiff, defendant concealed the wrongful termination by presenting the mutual termination agreement in a routine manner, by telling him that the Wheeler Road location would be just as profitable as his Bladensburg Road franchise, by promising to improve security and make other repairs at the Wheeler Road facility, and by delaying such repairs while the limitations period continued to run. Plaintiff further argues that he needs discovery to establish his fraudulent concealment claim. He asserts that defendant's motion for summary judgment must be denied, unless this Court finds as a matter of law that equitable tolling does not apply to the PMPA's limitations period.[1]

This Court need not decide whether equitable tolling applies to actions under the PMPA, for even assuming its application, the doctrine "does not come into play, whatever the lengths the defendant has gone to conceal the wrongs, if a plaintiff is on notice of a potential claim." *Hobson,* 737 F.2d at 35. Notice is presumed if plaintiff has "an awareness of sufficient facts to identify a particular cause of action." *Id.* If plaintiff had actual notice of

---

1. Only one federal circuit has decided the question of whether the doctrine of equitable tolling applies as a matter of law to the PMPA limitations period. *See Hill v. Texaco, Inc.,* 825 F.2d 333 (11th Cir.1987) (Congress did not intend for equitable tolling to apply where it created an extremely short limitations period and, unlike in other statutory limitations, it did not use any language which could be construed as starting the limitations period upon discovery of the violation.)

facts sufficient to state his claim, then the Court need not decide the issue of fraudulent concealment. *See Riddell v. Riddell Washington Corp.*, 866 F.2d 1480, 1491 (D.C.Cir.1989).

Plaintiff had actual awareness of sufficient facts to identify a cause of action for wrongful termination of his Bladensburg Road franchise. According to plaintiff, Amoco's representatives, in December of 1989, told plaintiff that his franchise would be closed and that his only alternative was to choose between two other Amoco-owned locations. Plaintiff asserts that he told Amoco that he did not want to leave his Bladensburg Road dealership. He claims that from the outset he worried that his neighborhood customers would not travel to Wheeler Road for automotive repairs. Nevertheless, plaintiff moved his equipment from his Bladensburg Road station and began operating at Wheeler Road in early February 1990. In addition, plaintiff signed a mutual cancellation agreement.[2] Thus, plaintiff knew that he no longer had a franchise for the Bladensburg Road facility no later than February 28, 1990. On that date, plaintiff had actual notice of sufficient facts to establish a prima facie case of wrongful termination under the PMPA. Therefore, the one-year limitations period began to run on February 28, 1990, and plaintiff's claim filed on July 23, 1991, is barred.

*Count II*

■ In Count II, plaintiff argues, in the alternative, that the termination of his franchise did not occur until December 1990, when, after months of trying to develop the Wheeler Road station into a profitable automotive repair business, he realized it would never be comparable to his Bladensburg Road franchise, as Amoco had promised. Therefore, he claims that his cause of action under the PMPA as to the Bladensburg Road location arose in December 1990.

Because plaintiff had an awareness of sufficient facts to establish a claim for wrongful termination as of February 28, 1990, his argument for constructive termination fails. Even if Amoco had promised that the Wheeler Road station would be comparable to the Bladensburg Road franchise, this cannot change the fact that plaintiff lost his Bladensburg Road dealership no later than February 28, 1990, and that, therefore, is the date of termination for purposes of a wrongful termination action.

*Counts III through VII—State Claims*

Counts III through VII are state claims for which plaintiff alleges pendent jurisdiction. Because the Court dismisses plaintiff's federal claims, the Court also dismisses plaintiff's state claims for lack of subject matter jurisdiction.[3] *See Gatewood v. Washington Healthcare Corp.*, 933 F.2d 1037, 1042 (D.C.Cir.1991) (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966)).

## CONCLUSION

For the reasons stated above, the Court finds plaintiff's PMPA claims are time-barred. Therefore, the Court grants defendant's motion for summary judgment as to Counts I and II. Because the Court thus disposes of plaintiff's federal claims, the Court dismisses the state law claims for lack of subject matter jurisdiction.

---

**2.** Although plaintiff maintains that he did not receive a copy of his PMPA rights, and the Court assumes this to be true for the purposes of this motion, on February 28, 1990, he did sign a mutual cancellation agreement which, as noted above, stated that "[t]he undersigned Dealer hereby acknowledges that he has received a copy of this document and [his PMPA rights]."

**3.** Plaintiff is a citizen of Maryland and defendant is a Maryland corporation; therefore the Court does not have diversity jurisdiction. *See* 28 U.S.C. § 1332.