**DuFRESNE'S AUTO SERVICE, INC.; Bobby L. Chaney; Denman Bird; Gerald Cochran; Bruce Chapman; Doll's Service Co., Inc.; Robert Peck; Dwight Estby Enterprises, Inc.; Gordon Olson; Norris Olson, Plaintiffs–Appellants,**

v.

**SHELL OIL COMPANY, a Delaware corporation, Defendant–Appellee.**

No. 91–35709.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 2, 1993.

Decided April 30, 1993.

David S. Shannon, Shannon, Johnson & Bailey, Portland, OR, for plaintiffs-appellants.

William N. Mehlhaf, Markowitz, Herbold, Glade & Mehlhaf, Portland, OR, for defendant-appellee.

Before: TANG, POOLE and RYMER, Circuit Judges.

RYMER, Circuit Judge:

A group of Shell-brand gasoline dealers in the Portland, Oregon area appeals the district court's grant of summary judgment in favor of Shell Oil Company in an action under the Petroleum Marketing Practices Act (PMPA), 15 U.S.C. §§ 2801-2806 (1978). The dealers seek declaratory relief and damages for termination and nonrenewal without notice of their franchises and franchise relationships. These claims arise out of Shell's 1987 assignment of the dealers' franchise contracts to Panoco, Inc., the dealers' subsequent execution of contracts for supply and sale of Shell-branded motor fuels with Panoco, and the expiration of the dealers' franchises with Shell in 1988.

The district court granted summary judgment on the ground of claim preclusion. At the time of its decision, there was a final judgment in a state court action by the same dealers for breach of contract against Shell and Panoco. *Chaney v. Shell Oil Co.*, Multnomah County Circuit Court No. A8903-01752 (Or.Cir.Ct.1989). In the meantime, however, the *Chaney* judgment has been affirmed as to some claims but reversed as to others. *Chaney v. Shell Oil Co.*, 111 Or.App. 556, 827 P.2d 196 (Or.Ct.App.), *review denied*, 313 Or. 299, 832 P.2d 455 (Or.1992).

The dealers' appeal challenges the preclusive effect of *Chaney* on this action. Shell argues that summary judgment may also be affirmed on the basis of the one-year statute of limitations in the PMPA. The dealers respond that this action is not time-barred because they did not know and should not have discovered that Shell had terminated their franchises or failed to renew their franchise relationships prior to November 1989 when Shell raised discharge of its liability on the dealers' franchises by way of affirmative defense in *Chaney*.

We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm on the ground that the dealers' action is barred by the statute of limitations.

I

Until February 1987, Shell supplied gasoline directly to Portland dealers and leased

gas station properties to them under franchise contracts for the supply of Shell gasoline and the dealers' use of Shell's trademark. Most of the dealers also had motor fuel station leases with Shell. However, in September 1986 Shell entered into a purchase agreement with Panoco, Inc., a jobber, or "distributor" under the PMPA, of Shell-branded products in Oregon, by which all service station properties owned by Shell were sold to Panoco and both leases and supply agreements with the Portland dealers were assigned to Panoco. The agreement required Panoco to assume Shell's obligations under the assigned contracts. Shell also entered into an ancillary franchise agreement with Panoco which permitted Panoco to use Shell's trademark and all dealers to use the trademark in connection with their resale of Shell-branded gasoline. Shell notified the dealers before the assignment was to become effective. This kicked off a series of lawsuits of which this action is one.

First, in 1986, a group of dealers, some of whom are plaintiffs in the present action, sought to enjoin Shell from assigning their franchise contracts to Panoco on the ground that the assignment constituted an improper termination of their Shell franchises in violation of the PMPA. *Fresher v. Shell Oil Co.*, No. CV–86–1307 (D.Or.1986). The district court dismissed the action and we affirmed in *Fresher v. Shell Oil Co.*, 846 F.2d 45 (9th Cir.1988). We observed that "[a] franchise is defined in terms of three elements: a contract to use the refiner's trademark, a contract for supply of motor fuel to be sold under the trademark, and a lease of the premises at which the motor fuel is sold[,]" *id.* at 46–47, and held that the assignment to Panoco did not constitute a termination of the franchises under the PMPA.

By July 1, 1987 all of the dealers, with the exception of Gordon and Norris Olson, had signed franchise agreements with Panoco. The Olsons continued to buy Shell-branded gasoline from Panoco under an oral agreement. Shell's franchise contracts with all of the dealers expired by their terms by the end of 1988, except for the contract with Bruce Chapman, which had an expiration date of August 31, 1991.

On July 20, 1988, counsel for the dealers wrote a demand letter to Shell asserting that Shell had breached its contractual obligations regarding, among other things, the price at which the dealers purchased gasoline. Shell responded that it would discuss the claims but believed no cause of action was stated. The dealers then filed federal and state court actions against Shell and Panoco alleging common law contract and tort claims, and Oregon state law claims arising out of the assignment of the franchises. The federal action, *DuFresne v. Shell Oil Co. (DuFresne I)*, No. CV–89–339–PA (D.Or.1989), was dismissed for failure to join an indispensable party, but each of the plaintiffs and defendants was joined in the state court action, *Chaney v. Shell Oil Co.* The state trial court granted summary judgment on or dismissed all claims against Shell.

*Chaney* was pending on appeal when the instant suit (*DuFresne II* ) was filed in district court in the District of Oregon on October 1, 1990. By consent of the parties, the case was assigned to Magistrate Judge George Juba pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73.

The dealers assert in this action that Shell has not terminated or nonrenewed their franchises, but that if it has, the termination was effective November 9, 1989 when Shell filed an affirmative defense in *Chaney* alleging that it was discharged from any contractual liability when the dealers entered into new franchise contracts with Panoco. They allege that the termination was without notice as required by 15 U.S.C. § 2804, and violated the dealers' rights under the PMPA.

Shell moved for summary judgment on the grounds that the dealers' execution of new franchise agreements with Panoco discharged Shell's PMPA liability, the claims are barred by the one-year PMPA statute of limitations, and the claims are barred by the claim preclusive effect of the judgment in *Chaney*. The district court initially granted summary judgment for Shell on statute of limitations grounds, then granted the dealers' motion for reconsideration and vacated its order of summary judgment. It did so on the footing that the November 1989 affirmative defense was an attempted "notice" which

started the statute running—because the notice came after the expiration of the underlying franchise agreements but during the course of continuing franchise relationships, and was done without complying with the PMPA notification requirements. On May 30, 1991, the district court again granted summary judgment for Shell, this time on the ground of claim preclusion. This timely appeal followed.

After briefing of this appeal, the Oregon Court of Appeals affirmed dismissal of the contract claims as to those plaintiffs whose agreements with Shell had expired by January 20, 1988, and reversed the judgment as to Chapman and Doll's Service Co., Inc., whose agreements expired after that date. *Chaney v. Shell Oil Co.*, 111 Or.App. 556, 827 P.2d 196, *review denied*, 313 Or. 299, 832 P.2d 455 (1992). We ordered supplemental briefing on the effect of the appellate court decision on the district court's judgment, which was based on principles of res judicata (claim preclusion). However, given our view that the judgment must stand because the dealers' claims are time-barred, we do not reach the issue of claim preclusion.

## II

A district court's grant of summary judgment is reviewed de novo. *Kruso v. International Telephone & Telegraph Corp.*, 872 F.2d 1416, 1421 (9th Cir.1989), *cert. denied*, 496 U.S. 937, 110 S.Ct. 3217, 110 L.Ed.2d 664 (1990). We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Tzung v. State Farm Fire & Casualty Co.*, 873 F.2d 1338, 1339–40 (9th Cir.1989). We may affirm a summary judgment on any ground supported by the record. *United Ass'n of Journeymen & Apprentices of Plumbing, Local 342 v. Valley Engineers*, 975 F.2d 611, 613 (9th Cir.1992), *amended on other grounds*, (9th Cir. Oct. 16, 1992). A ruling on the appropri-

ate statute of limitations is reviewed de novo. *Felton v. Unisource Corp.*, 940 F.2d 503, 508 (9th Cir.1991).

## III

The PMPA contains its own statute of limitations. PMPA claims must be brought within one year after the later of

(1) the date of termination of the franchise or non-renewal of the franchise relationship; or

(2) the date the franchisor fails to comply with the requirements of section 2802 or 2803 of this title.

15 U.S.C. § 2805(a).

Shell argues that the district court was correct in its initial decision that § 2805(a)(1) applies to the dealers' claims and that the one-year period at the latest began to run from the date when a nonrenewal would have occurred, that is, when the franchise contracts of all dealers but Chapman expired. It contends that since there was no actual termination, Chapman's claim is really for "constructive termination," and that such a claim is time-barred because it would have accrued in July 1988 when his counsel advised Shell of contractual breaches arising out of the assignment to Panoco.[1]

The dealers, on the other hand, urge that the applicable statute of limitations is § 2805(a)(2), and that the district court properly concluded on reconsideration that termination of a "franchise relationship" could occur after the franchise agreements expire. As Shell gave no notice of an intent to terminate or nonrenew prior to November 1989, the dealers contend that they had until November 1990 to file an action for violation of the PMPA.

Whether a franchisee's PMPA claims are timely depends upon the relationship between the date of termination or non-renewal and the franchisor's failure to comply with the requirements of § 2802. This, in turn, requires that we examine the substantive obligations of the PMPA as defined in § 2801 and set out in §§ 2802 and 2804.

---

1. We do not read the dealers' complaint as alleging a "constructive termination," and so do not consider whether such a theory is recognized in this Circuit. *See Little Oil Co. v. Atlantic Rich-* *field Co.*, 852 F.2d 441, 445 (9th Cir.1988) (declining to decide "whether the [PMPA] applies to 'constructive' terminations").

## A

The PMPA is intended to protect gas station franchise owners from arbitrary termination or nonrenewal of their franchises with large oil corporations and gasoline distributors, and to remedy the disparity in bargaining power between parties to gasoline franchise contracts. *See* S.Rep. 95–731, 95th Cong., 2d Sess., at 17–19 (1978), *reprinted in* 1978 U.S.C.C.A.N. 873, 875–77; *Fresher*, 846 F.2d at 46; *May–Som Gulf, Inc. v. Chevron U.S.A., Inc.*, 869 F.2d 917, 921 (6th Cir.1989).

The cornerstone of the PMPA is 15 U.S.C. § 2802, which precludes franchisors from terminating any franchise or failing to renew any franchise relationship unless notification requirements are met and the termination or nonrenewal is based on specified grounds. Section 2802 states:

(a) Except as provided in subsection (b) of this section ..., no franchisor engaged in the sale, consignment, or distribution of motor fuel in commerce may—

(1) terminate any franchise (entered into or renewed on or after June 19, 1978) prior to the conclusion of the term, or the expiration date, stated in the franchise; or

(2) fail to renew any franchise relationship (without regard to the date on which the relevant franchise was entered into or renewed).

(b)(1) Any franchisor may terminate any franchise ... or may fail to renew any franchise relationship, if—

(A) the notification requirements of section 2804 are met; and

(B) such termination is based upon a ground described in paragraph (2) or such nonrenewal is based upon a ground described in paragraph (2) or (3).

15 U.S.C. § 2802.

The PMPA distinguishes between a "franchise" and a "franchise relationship." A "franchise" is a contract between a refiner (such as Shell) and a retailer, or between a distributor (such as Panoco) and a retailer, under which the refiner or distributor permits the retailer to use the refiner's trademark in connection with the sale of motor fuel or premises to be used for motor fuel sales. 15 U.S.C. § 2801(1)(A). A "franchise relationship" means "the respective motor fuel marketing or distribution obligations and responsibilities of a franchisor and franchisee which result from the marketing of motor fuel under a franchise." 15 U.S.C. § 2801(2).

A franchise may be assigned as authorized by the provisions of the franchise or by state law. 15 U.S.C. § 2806(b). The term "franchise" includes the unexpired portion of any franchise which is transferred or assigned.[2] 15 U.S.C. § 2801(1)(B)(iii).

"Termination" includes cancellation, 15 U.S.C. § 2801(17), while

[t]he terms "fail to renew" and "nonrenewal" mean, with respect to any franchise relationship, a failure to reinstate, continue, or extend the franchise relationship—

(A) at the conclusion of the term, or on the expiration date, stated in the relevant franchise;

(B) at any time, in the case of the relevant franchise which does not state a term of duration or an expiration date; or

(C) following a termination ... of the relevant franchise which was entered into prior to June 19, 1978, and has not been renewed after such date.

15 U.S.C. § 2801(14). Sections 2801(14)(B) and (C) are inapplicable to this case. Thus, to the extent the dealers' complaint pertains to a failure to renew, the "nonrenewal" would occur only under § 2801(14)(A) at the expiration dates stated in the dealers' franchises.

Finally, a franchisor must furnish notification 90 days in advance of a termination of a franchise or nonrenewal of a franchise relationship stating its intention to terminate or not renew, the reasons for the decision, the date on which the termination or nonrenewal takes effect, and a PMPA summary. 15 U.S.C. § 2804(a), (c).

## B

Under § 2805 an action may be brought for failure to comply with the requirements

---

**2.** The legislative history indicates that "[a] franchise based upon the unexpired term of a transferred franchise is intended to be credited with the expired portion of the predecessor franchise." S.Rep. 95–731, at 30, 1978 U.S.C.C.A.N. at 888.

of § 2802. These include meeting the notification requirements of § 2804, and basing a termination or nonrenewal on a ground specified in § 2802. The action must be commenced within one year of the date of termination or nonrenewal, 15 U.S.C. § 2805(a)(1), or the date the franchisor fails to comply with the requirements of § 2802, 15 U.S.C. § 2805(a)(2), whichever is later.

It is undisputed that Shell gave no notification of termination or nonrenewal of any franchise relationship pursuant to § 2804.[3] Nor does it justify a "termination" or "nonrenewal" on any of the grounds set out in § 2802. Rather, Shell's position is that it did not have to do either, because its assignment to Panoco did not terminate the dealers' franchises or fail to renew their franchise relationships. Instead, a franchise may be assigned, 15 U.S.C. § 2806(b), and by virtue of its assignment of the dealers' franchises to Panoco and the execution by the dealers of new franchise contracts with Panoco, Shell contends that its PMPA obligations were discharged. 15 U.S.C. § 2801(1)(B)(iii). In any event, Shell argues that there was no midterm cancellation of any franchise, and thus no "termination," and that any cause of action for "nonrenewal" of the franchise relationship must have accrued when the franchise contracts ended by their own terms of duration.

Resolving the issue is complicated because the dealers pursue alternative theories—that Shell did *not* terminate or nonrenew their franchises or franchise relationships (because neither the assignment to Panoco nor execution of new contracts with Panoco had that effect), and that Shell *did* terminate their franchises or franchise relationships as of November 9, 1989 when it raised the issue of discharge in its affirmative defense. Either way, they contend, Shell violated their PMPA

rights because any termination of their franchises or franchise relationships in November 1989 was without notice as required by § 2804. They also argue that the statute of limitations is tolled because they did not know, and should not have discovered, that Shell had purported to terminate or not renew their franchises or franchise relationships prior to receiving the November 1989 affirmative defense.

We take the various possibilities in turn.

## 1. Declaratory relief respecting renewal or nonrenewal

By the plain language of § 2801(14)(A), "nonrenewal" of a franchise relationship occurs "at the conclusion of the term, or on the expiration date, stated in the relevant franchise." 15 U.S.C. § 2801(14)(A); *see also Hill v. Texaco, Inc.*, 825 F.2d 333, 334 (11th Cir.1987) ("the latest date under 15 U.S.C. sec. 2805 that the limitation period started was ... when [the dealer's] franchise was not renewed"); *Wirkkula v. Union Oil Co.*, 98 Or.App. 282, 780 P.2d 223, 225 (1989) ("The *only* date on which Unocal's nonrenewal of plaintiff's lease could be effective under [§ 2801(14)] is the date on which the lease expired."), *adhered to on reconsideration,* 100 Or.App. 219, 785 P.2d 372 (1990), *review denied,* 310 Or. 122, 794 P.2d 794 (1990). All of the franchise agreements between the dealers and Shell, with the exception of the agreement with Chapman, expired before January 1, 1989.

While it is true that a "franchise relationship" is what is renewed (or not renewed), that simply means that a legal relationship exists even though the terms of the contract between franchisor and franchisee may change.[4] "Franchise relationship" is de-

---

**3.** The district court's order on reconsideration characterized the November 1989 affirmative defense as an attempted "notice" which came after expiration of the underlying franchise agreements and which did not comply with § 2802. Because the statute of limitations does not start running until the franchisor fails to comply with § 2802, the court reasoned that the noncomplying "notice" triggered § 2805(a)(2)'s enforcement provisions.

**4.** The term "franchise relationship" was coined for two reasons: "to avoid any contention that because the 'franchise' does not exist [after it expires,] there is nothing to renew," and to clarify that the PMPA "contemplates changes in the specific provisions of the franchise agreement at the time of renewal." S.Rep. 95–731 at 30, 1978 U.S.C.C.A.N. at 888; *see also Svela v. Union Oil Co.*, 807 F.2d 1494, 1500 (9th Cir.1987); *Consumers Petroleum Co. v. Texaco, Inc.*, 804 F.2d 907, 911 (6th Cir.1986) ("A franchise relationship is nothing more than the distribution obli-

fined in the PMPA as a set of obligations and responsibilities "under a franchise." 15 U.S.C. § 2801(2). A franchise is a contract. 15 U.S.C. § 2801(1). Here, each of the dealers, including Chapman, had entered into a franchise contract for Shell-branded gasoline with *Panoco* and had thereby established a franchise relationship with *it*, before January 1, 1989. Regardless of whether Shell continued to have contractual or PMPA obligations as an assignor—something we are not called upon to decide in this case—it was not a party to the franchise agreements between the dealers and Panoco. *See Hutchens v. Eli Roberts Oil Co.*, 838 F.2d 1138, 1144 (11th Cir.1988) (oil company is not a party to a franchise agreement between a distributor and a retailer); *Ackley v. Gulf Oil Corp.*, 726 F.Supp. 353, 360 n. 9 (D.Conn.) ("the assignor does not continue as a party to the franchise relationship"), *aff'd*, 889 F.2d 1280 (2d Cir.1989), *cert. denied*, 494 U.S. 1081, 110 S.Ct. 1811, 108 L.Ed.2d 941 (1990).

Therefore, any action arising out of nonrenewal of the dealers' franchise relationships with Shell had to have been brought within one year of the expiration date of the franchise contracts with Shell. By January 1, 1989 each of the dealers knew that his franchise agreement was with Panoco and, except for Chapman, knew that there was no remaining term on the franchise with Shell. Whether or not notice was required or given, each of these dealers knew that the date of renewal of a relationship between Shell and the dealer had passed without a new franchise agreement between the dealer and Shell. Thus, these dealers' claims for nonrenewal, if any, had to accrue, if ever, no later than January 1, 1989, more than one year before this action was filed.

■ Chapman's situation is factually different from that of the other dealers because his franchise was to expire on August 31,

1991. Therefore, his claim based on nonrenewal could theoretically have been ripe for one year after that date. However, we need not resolve whether he should be treated differently from dealers whose contracts did expire more than one year before this suit was field. Chapman voluntarily agreed to a termination of his franchise agreement effective April 17, 1990, a date before his franchise would have expired and would have been potentially subject to renewal. In the absence of a franchise, no franchise relationship exists to be renewed or nonrenewed. Having voluntarily given up his franchise, Chapman had nothing to renew.[5]

## 2. Declaratory relief respecting termination

■ The only evidence bearing on a "termination" upon which the dealers rely is the November 1989 affirmative defense asserted by Shell in the *Chaney* litigation. It averred:

> Any alleged liability Shell had to plaintiffs arising out of any contractual relationship that existed between Shell and the plaintiffs at any time material to plaintiffs' complaint was discharged as a result of the plaintiffs' execution of subsequent contracts with Panoco, Inc.

The dealers contend that this assertion was the first clue they had that Shell thought it had already terminated their franchises or nonrenewed their franchise relationships. Alternatively, they argue that this is when the impact of a termination was felt. Either way, they argue, they had one year from November 9, 1989 to claim that Shell had violated the PMPA by failing to give notice. We believe the claims are untimely no matter whether they pertain to an alleged "termination" that took place as of November 9, 1989, or to "notice" given on November 9, 1989 of a "termination" that had occurred

---

gations and responsibilities resulting from a particular franchise.").

**5.** This conclusion is consistent with Congress's rationale for creating the legal entity of a "franchise relationship." *See* footnote 4, *supra*. Part of the rationale is that when a franchise ends, the franchisor should not be able to avoid a new franchise contract by arguing that there is "nothing to renew." This rationale does not supersede

the statutory mandate that nonrenewal under the circumstances of this case may only occur "on the expiration date ... stated in the relevant franchise." 15 U.S.C. § 2801(14)(A). Here, Chapman voluntarily gave up his franchise and truly had "nothing to renew." Therefore, he had no franchise at all, and no "franchise relationship" to be renewed or nonrenewed.

928

when the dealers entered into franchise agreements with Panoco.

Declaratory relief as to whether the dealers' franchises were terminated is time-barred because the dealers' complaint is not substantively different from the claim asserted in *Fresher*, nor is the ground relied upon by Shell in its affirmative defense substantively different from the ground relied upon by the court in *Fresher*. In both instances, the claim turns on whether Shell's assignment of the dealers' franchises to Panoco and the dealers' subsequent entry into franchise agreements with Panoco "terminates" their franchises with Shell. *Fresher* held that, absent breach of any agreements which constitute components of the franchise, there is no termination. *Fresher*, 846 F.2d at 47. Here, there is no evidence that any dealer was denied any contractual right to use Shell's trademark, Shell-branded gasoline, or a lease of premises where Shell motor fuel is sold. Evidence of the affirmative defense, therefore, amounts to nothing more than what the dealers claimed when they brought the *Fresher* action. Thus, the dealers' action based on any "termination" arising out of execution of contracts with Panoco following Shell's assignment is untimely.

### 3. Tolling

The dealers argue that regardless of the date when their franchises were arguably terminated or their franchise relationships with Shell arguably nonrenewed for purposes of the limitation period under § 2805(a)(1), the present action is timely under § 2805(a)(2) because Shell's failure to comply with the notice requirements of § 2802 was first manifest on the later date of November 9, 1989.

Section 2805(a)(2) permits actions filed within one year of "the date of failure to comply with the requirements of section 2802" if it is later than the date of termination or nonrenewal. 15 U.S.C. § 2805(a)(2). Shell's alleged failure in this case was termination without providing notice as required by § 2804. 15 U.S.C. § 2804(a)(2) (requiring 90 days notice). Assuming the terminating event was the dealers' execution of new franchise agreements

with Panoco, Shell's failure to give notice occurred before January 1, 1989. Therefore, the dealers' action would be timely on a post-hoc notice theory only if the statute of limitations were tolled until notice was given, allegedly November 9, 1989.

■ The statute does not admit of tolling. It plainly says that "no action shall be maintained unless commenced within one year of ... the date of" the violation (lack of notice in this case), or the date that the franchise ended. The Eleventh Circuit held in *Hill v. Texaco* that when, as in the PMPA, Congress has set an exact starting point for a limitations period, and has said nothing about starting the period from discovery of the violation or when the cause of action accrues, equitable tolling cannot be applied. *Id.*, 825 F.2d at 334–35. In that case, seventeen months after Texaco failed to renew his franchise, Hill acquired previously unavailable evidence of Texaco's noncompliance with § 2802. *Id.* at 334. The court held that his claims were time-barred because the limitations period commenced at the time of nonrenewal and was not subject to tolling. *Id.* at 334–35. Because the dealers in this case knew about their own contracts with Panoco and the expiration of their contracts with Shell, theirs is an even weaker case for tolling than Hill's. *Cf. Johnson v. Amoco Oil Co.*, 790 F.Supp. 335, 338–39 (D.D.C.1992) (court does not reach issue of equitable tolling of PMPA statute of limitations where plaintiffs knew facts giving rise to their claim at the time of termination).

The dealers argue that their case is different because they did not know of Shell's position that the dealers' new contracts with Panoco discharged its liability—or in the dealers' view, arguably terminated or nonrenewed their franchise relationships—until the affirmative defense was raised in November 1989. They point to *Hodge v. Texaco, Inc.*, Business Franchise Guide (CCH) ¶ 8652 (D.Or.1982), in which the court upheld the timeliness of an action filed over one year after a franchise was terminated. However, in *Hodge* the franchisee was given retroactive notice of an assignment which allegedly terminated the dealer's franchise relationship. Suit was filed within one year of the

notice. *Id.* at 16,708. The franchisee had no way of knowing of the assignment at the time it occurred. By contrast, in this case the franchisees knew of the assignment, knew that they entered into contracts for Shell-branded gasoline with Panoco, and knew that their contracts with Shell expired (and were not renewed) before January 1, 1989.

In sum, the November 1989 "notice" referred to a fact known to the dealers during 1987: that they executed contracts for Shell-branded motor fuel with Panoco. Whether or not the dealers' entry into contracts with Panoco for Shell-branded gasoline and expiration of the Shell contracts without renewal and without notice violated PMPA, the violation alleged—lack of notice as required by § 2804 for a terminating event—also occurred by January 1, 1989. There is no basis for tolling the statute of limitations because the dealers knew by that date of the facts giving rise to their claims of termination or nonrenewal and of Shell's alleged violation of the PMPA's notice requirements in connection with the assignment to Panoco, Panoco's entry into agreements with the dealers, and the expiration of the dealers' franchises with Shell without Shell's renewing the relationship.

### IV

Because the dealers' claims for termination and nonrenewal are barred by the one-year PMPA statute of limitations and because the statute of limitations is not tolled, the district court's grant of summary judgment is

AFFIRMED.

* The panel finds this case appropriate for submission without oral argument pursuant to 9th