**Fred F. KORANGY, et al.**

v.

**MOBIL OIL CORPORATION, et al.**

Civil No. CCB–98–2803.

United States District Court,
D. Maryland.

Jan. 21, 2000.

Harry C. Storm, Abrams, West & Storm, P.C., Bethesda, MD, for Energy Group Ltd.

Edward C. Duckers, Hogan & Hartson, Washington, DC, Stephen G. Vaskov, Hogan & Hartson L.L.P., Washington, DC, Lowell R. Stern, Hogan & Hartson, LLP, Washington, DC, Kimberly D. Ziropoulos, Hogan & Hartson, LLP, Washington, DC, for Mobil Oil Corp.

Morton A. Sacks, McGuire, Woods, Battle & Boothe, Baltimore, MD, Joseph Martin English, IV, McGuire, Woods, Battle & Boothe, LLP, Baltimore, MD, Michael J. Kresslein, McGuire Woods Battle & Boothe, LLP, Baltimore, MD, for Carroll Independent Fuel Co.

Morton A. Sacks, McGuire, Woods, Battle & Boothe, Baltimore, MD, Michael J. Kresslein, McGuire Woods Battle & Boothe, LLP, Baltimore, MD, for HJR–Benson Venture LLC.

## MEMORANDUM

BLAKE, District Judge.

Now pending before this Court are motions by Defendants Mobil Oil Corporation ("Mobil"), Carroll Independent Fuel Company ("CIF"), and HJR–Benson Venture LLC ("HJR") for summary judgment. Plaintiff Fred F. Korangy, as agent for and on behalf of Plaintiff Energy Group Ltd. ("Energy Group"), had leased a retail service station from Mobil pursuant to a 1995 franchise agreement. In December 1996, Mobil assigned the franchise to CIF and sold the premises to HJR, which entered into a lease with CIF. Plaintiffs have sued Defendants alleging that Mobil violated the Petroleum Marketing Practices Act ("PMPA"), 15 U.S.C. §§ 2801–2806, by failing to renew (Count I) and constructively renew (Count II) Plaintiffs' franchise. Plaintiffs have also alleged state law claims against Mobil for breach of contract (Count III), and against CIF and HJR for constructive trust (Count IV). Defendant Mobil has filed a motion for summary judgment on Counts I through III, and Defendants CIF and HJR have filed a motion for summary judgment on Count IV. This matter has been fully briefed and no hearing is necessary. See Local Rule 105.6. For the reasons that follow, the Court will grant Mobil's motion in part, deny it in part, and deny the joint motion by CIF and HJR.

## STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure provides that:

[Summary judgment] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

A genuine issue of material fact exists if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir.1994).

In making this determination, the evidence of the party opposing summary judgment is to be believed and all justifiable inferences drawn in her favor. *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 196 (4th Cir.1997) (citing *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505). The non-moving party may not rest upon mere allegations or denials in her pleading, however, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *Allstate Fin. Corp. v. Financorp, Inc.*, 934 F.2d 55, 58 (4th Cir.1991). The "mere existence of a scintilla of evidence in support of the plaintiff's position" is not enough to defeat a defendant's summary judgment motion. *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

## BACKGROUND

Plaintiff Fred Korangy, as agent for and on behalf of Plaintiff Energy Group, has been the retail service station dealer/franchisee at a Mobil service station at 400 Russell Street, Baltimore, Maryland ("Marketing Premises") since March 28, 1991. (Pls. Opp'n to Mobil's Summ. J. Mot., Ex. 12 ["1995 Franchise Agreement"], p. 1) Defendant Mobil is a New York corporation engaged in the business of refining and marketing petroleum and related products. (Am.Compl., ¶ 2) Mobil leased the Marketing Premises to the Plaintiffs. (1995 Franchise Agreement, p. 1) The latest franchise agreement between Mobil and the Plaintiffs was effective from July 1, 1995, through June 30, 1998. (*Id.* at p. 2) That agreement provided that "Mobil may assign this agreement, franchise and franchise relationship to any other affiliated corporation." (*Id.* at p. 23) The agreement also contained a provision stating: "Notwithstanding notice by Dealer to Mobil, any claim by dealer shall be waived and barred unless asserted by the commencement of a lawsuit in a court of competent jurisdiction within 12 months after the event, action or inaction to which such claim relates." (*Id.* at p. 18)

According to Mobil, in late 1995, it concluded that marketing through a distributor would be the most effective method for increasing its sales in Baltimore County. (Decl. of Stephen J. Bottomly, Mobil's Summ. J. Mot., Ex. 6 ["Bottomly Decl."], ¶¶ 5–11) Therefore, in December 1996, Mobil assigned fifteen service station franchises to Defendant CIF, a distributor of petroleum and related products. (*Id.* at ¶ 13) As part of the agreement, CIF agreed to purchase approximately 950 million gallons of gasoline from Mobil and agreed to convert many of its existing Citgo brand stations to Mobil brand stations. (*Id.* at ¶ 14) Since Korangy's station was one of the franchises involved in the agreement, Mobil assigned its rights and duties under the 1995 Franchise Agreement to CIF. (Am.Compl., ¶ 6) At the same time, Mobil sold the Marketing Premises to Defendant HJR, an affiliate of CIF, which subsequently entered into a lease with CIF. (Pls. Opp'n to Mobil's Summ. J. Mot., Exs. 4 & 7)

Korangy was not given a right of first refusal for the premises. (Dep. of Fred F. Korangy, Pls. Opp'n to Mobil's Summ. J. Mot., Ex. A ["Korangy Dep."], p. 68) The parties dispute whether he was given notice of the assignment. According to Mobil, on October 24, 1996, it sent a letter to each of the fifteen franchise owners notifying them that Mobil had completed an agreement with CIF and that, pursuant to the agreement, CIF was to "purchase and assume franchisor rights and responsibilities" for the fifteen stations involved in the transaction. (Bottomly Decl., ¶ 16; Mobil's Summ. J. Mot., Ex. 11) The letter also invited the dealers to attend an informational meeting with Mobil and CIF representatives at Bowman's Restaurant. (*Id.*) While Plaintiffs admit receiving an invitation to Bowman's Restaurant, they deny receiving a letter containing information about the sale and assignment. (Dep. of Kevin K. Veissy, Pls. Opp'n to Mobil's Summ. J. Mot., Ex. H ["Veissy Dep."], pp. 56–58)

On November 7, 1996, a meeting was held at Bowman's Restaurant. (Bottomly Decl., ¶ 17) Kevin Veissy, the day-to-day manager of the Marketing Premises, attended on behalf of Korangy and Energy Group. (Veissy Dep., p. 60) Mobil's representations regarding that meeting are somewhat contradictory. According to one Mobil representative, Mobil informed the dealers at the meeting that CIF would assume Mobil's responsibilities as franchisor and that Mobil was selling the service station premises. (Dep. of Mark F. Booth, Mobil's Summ. J. Mot., Ex. 4 ["Booth Dep."], pp. 23–24) But, James Moran, an asset sales manager for Mobil, stated that the specifics of the agreement were not discussed at the Bowman's Restaurant meeting. (Dep. of James Moran, Pls. Opp'n to Mobil's Summ. J. Mot., Ex. I ["Moran Dep."], pp. 8–9)

Plaintiffs contend that Mobil failed to give any specific details regarding the agreement between Mobil and CIF. (Veissy Dep., p. 63) In addition, Plaintiffs claim that Mobil failed to provide them with any notice of the assignment. (Korangy Dep., p. 68) Plaintiffs admit that, beginning in December 1996, they began purchasing gasoline from CIF and paying rent to CIF. (Veissy Dep., pp. 84–85) But, Plaintiffs claim to have believed that CIF was simply a distributor for Mobil's products in Baltimore, and that, otherwise, the relationship between Mobil and the Plaintiffs had remained unchanged. (Id. at pp. 77–80; Korangy Dep., pp. 44 & 51) Plaintiffs admit that CIF fully performed its obligations under the 1995 Franchise Agreement. (Korangy Dep., pp. 74–75)

On April 27, 1998, CIF presented the Plaintiffs with a proposed franchise agreement to take effect on July 1, 1998, immediately following the expiration of the 1995 Franchise Agreement. (Mobil's Summ. J. Mot., Ex. 8 ["CIF Agreement"]) The CIF Agreement contained terms that differed from the ones in the 1995 Franchise Agreement, including the following: (1) that the relationship creates a subtenancy, (2) a minimum gallonage clause with a $.03 per gallon penalty if the minimum volume is not achieved monthly, (3) a provision for immediate termination of the contract under various conditions, (4) a requirement that as a condition to CIF consenting to any assignment, the proposed assignee must accept a trial franchise, and (5) a provision that CIF may withhold consent to an assignment if the proposed assignment is for greater consideration than the interest to be acquired in the tangible assets of the business. (Id.) Apparently, this agreement was the first notice Plaintiffs received that the Marketing Premises had been sold to HJR. (Korangy Dep., p. 55; Dep. of John H. Phelps, Pls. Opp'n to Mobil's Summ. J. Mot., Ex. B ["Phelps Dep."], p. 71)

In May 1998, after receiving the CIF Agreement, Plaintiffs wrote to Mobil requesting a renewal franchise agreement from Mobil. (Pls. Opp'n to Mobil's Summ. J. Mot., ¶ 13) Mobil did not respond to Plaintiffs' request. (Am.Compl., ¶ 12) In June 1998, Plaintiffs signed the CIF Agreement "under protest" so that they could continue operating the Mobil service station at the Marketing Premises. (Pls. Opp'n to Mobil's Summ. J. Mot., Ex. 16) On June 24, 1998, Plaintiffs filed a complaint against Mobil, CIF, and HJR. Plaintiffs alleged that Mobil failed to renew the franchise, constructively failed to renew the franchise, and breached its contract with the Plaintiffs. (Am.Compl., ¶¶ 13–26) Plaintiffs also requested the Court to charge a constructive trust upon the Marketing Premises and require HJR and CIF to divest their interests in the Marketing Premises. (Id. at ¶¶ 27–29)

In an opinion dated January 20, 1999, this Court denied the Defendants' motions to dismiss, holding that the Plaintiffs' complaint alleged sufficient facts to demonstrate that Mobil had breached the 1995 Franchise Agreement by assigning the franchise and selling the Marketing Premises. (Mem. Op. of 1/20/99, pp. 6–7) This Court further held that the 1995 Franchise

Agreement was ambiguous as to whether Mobil could assign the franchise to an unaffiliated entity, thereby potentially making the assignment to the unaffiliated CIF a violation of the 1995 Franchise Agreement. (*Id.*) Since such a breach would violate Maryland state law, the Court held that the assignment could constitute a termination under the PMPA. (*Id.* at pp. 5 & 7) Therefore, the Court denied the motions to dismiss and declined to address the parties' other arguments. (*Id.* at p. 7)

On August 27, 1999, after the completion of discovery, each of the Defendants filed for summary judgment. Mobil explains that the provision of the 1995 Franchise Agreement relied on in the court's January 20, 1999, opinion was drafted by a Mobil in-house attorney, William Snead. (Dep. of William Snead, Mobil's Summ. J. Mot., Ex. 5 ["Snead Dep."], pp. 18–19) Snead contends that this provision was added "to clarify that Mobil would have an unrestricted right to transfer all of the rights and obligations that Mobil Oil Corporation had into" a proposed new marketing affiliate. (*Id.* at p. 21) He claims that the provision was not intended to restrict Mobil's ability to assign its rights and obligations. (*Id.* at pp. 21–23)

Korangy, on the other hand, states that he understood the agreement to allow assignments only to affiliated companies. (Korangy Dep., pp. 167–68) Korangy contends that he specifically agreed to the 1995 Franchise Agreement because Mobil, a respected oil producer and refiner, or one of Mobil's affiliates, would be his landlord. (*Id.* at pp. 90 & 167–68) Korangy claims that he viewed this limitation as especially important since, under Maryland law, Mobil cannot operate retail outlets in Maryland. (*Id.* at 167–68; Dep. of Arnold Heckman, Pls. Opp'n to Mobil's Summ. J. Mot., Ex. J ["Heckman Dep."], p. 66) As a result, Mobil has an incentive to guarantee that its dealers remain economically viable. (Heckman Dep., p. 66) In contrast, CIF can operate stations in Maryland. (*Id.*) Therefore, CIF could raise the dealers' rents to a level where the dealers could no longer stay in business, thereby allowing CIF to operate the location itself. (*Id.*) According to Korangy, he bargained for the assignment limitation to avoid this potential risk. (Korangy Dep., pp. 167–68)

According to Plaintiffs' expert, Arnold Heckman, the franchise agreement assignment and sale of the Marketing Premises have damaged Plaintiffs economically. (Heckman Dep., pp. 71–79) Heckman contends that, since CIF is not as financially stable as Mobil, Plaintiffs now bear a greater risk. (*Id.* at p. 104) In addition, the subtenant relationship makes the property "infinitely" less sellable. (*Id.* at pp. 89–90) Finally, CIF has raised Plaintiffs' rent and allowed the condition of the Marketing Premises to degrade. (Korangy Dep., p. 78)

## ANALYSIS

### I. Plaintiffs' PMPA Claims

■ The PMPA protects franchisees from arbitrary or discriminatory termination or nonrenewal of their motor fuel franchises. *See* 15 U.S.C. §§ 2801–2806; *see also Barnes v. Gulf Oil Corp.*, 795 F.2d 358, 360 (4th Cir.1986) ("*Barnes I*"). In order to invoke the protections of the PMPA, franchisees must first prove that their franchise was terminated or nonrenewed. *See, e.g., Clark v. BP Oil Co.*, 137 F.3d 386, 390 (6th Cir.1998); *May–Som Gulf, Inc. v. Chevron U.S.A., Inc.*, 869 F.2d 917, 923 (6th Cir.1989).

As explained in this Court's January 20, 1999, Memorandum:

> Courts have recognized assignments as termination or nonrenewals of a franchise in two instances: (1) when an assignment is invalid as a violation of state law, or (2) when an assignment results in a breach of one of the three statutory components of the franchise. *See Beachler v. Amoco Oil Co.*, 112 F.3d 902, 906 (7th Cir.1997); *Barnes*, 795 F.2d at

363–64. Plaintiffs allege that the 1996 assignment was invalid because it violated state law. Under Maryland law, contract rights are freely assignable (1) "[u]nless otherwise agreed," or (2) except when "the assignment would materially change the duty of the other party, or increase materially the burden or risk imposed on him by his contract, or impair materially his chance of obtaining return performance." Md.Code Ann., Com. Law § 2–210(1)–(2).

Mem. Op. of 1/20/99, p. 5.

This court held that the Plaintiffs alleged sufficient facts to demonstrate that Mobil breached the 1995 Franchise Agreement. That agreement provided that "Mobil may assign this agreement, franchise and franchise relationship to any other affiliated corporation." The court held that the language was ambiguous as to whether Mobil could assign the franchise to the unaffiliated CIF. *Id.* at pp. 6–7. Therefore, since such an assignment could violate Maryland law, it could violate the PMPA. *Id.* at pp. 5 & 7.

In its summary judgment motion, Mobil has, for the most part, simply reiterated the arguments that were rejected in denying Mobil's motion to dismiss.[1] The only evidence Mobil offers in attempting to clarify the ambiguous contract provision is the testimony of William Snead, Mobil's in-house attorney who drafted the provision. Snead contends that this provision was added "to clarify that Mobil would have an unrestricted right to transfer all of the rights and obligations that Mobil Oil Corporation had into" a proposed new marketing affiliate. Thus, Snead claims that the provision was not intended to limit Mobil's ability to assign the franchise to an unaffiliated entity.

Snead's testimony, however, is insufficient to justify a grant of summary judgment. Unlike Snead, Korangy contends that this provision was intended to limit Mobil's ability to assign the contract. In fact, Korangy claims that one of the reasons he entered into the contract was because of this provision. Korangy wanted to guarantee that he was dealing with a respected company, such as Mobil. In addition, Korangy claims that, since Mobil cannot operate retail outlets in Maryland, this provision protected him from being squeezed out of his franchise by a franchisor seeking to take over the station's operations. A reasonable jury could believe Korangy's description of the parties' intent, thereby making summary judgment inappropriate. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Shaw v. Stroud,* 13 F.3d 791, 798 (4th Cir.1994).

■ In its motion for summary judgment, Mobil also argues that Plaintiffs' constructive nonrenewal claim is barred by the PMPA's one year statute of limitations. The PMPA requires that any action be brought within one year after the later of (1) the date of termination or nonrenewal of the franchise; or (2) the date the franchisor fails to comply with the requirements of section 2802 or 2803. *See* 15 U.S.C. § 2805(a). According to Mobil, any constructive nonrenewal occurred on December 17, 1996, the date that Mobil assigned the 1995 Franchise Agreement to CIF.

But, the statute states that nonrenewal occurs "at the conclusion of the term, or on the expiration date, stated in the relevant franchise...." 15 U.S.C. § 2801(14)(A). Here, the term was not scheduled to end until June 30, 1998. Therefore, the nonrenewal did not occur until June 30, 1998,

---

**1.** In its reply memorandum, Mobil argues that "time has not stood still since the *Barnes* decisions" and states that recent Fourth Circuit opinions provide less protection for franchisees. Mobil's Reply Mem. in Supp. of Summ. J., p. 2 (*citing Keener v. Exxon Co.,* 32 F.3d 127, 130 (4th Cir.1994); *Hinkleman v.*

*Shell Oil Co.,* 962 F.2d 372, 377 (4th Cir. 1992)). While the court acknowledges the less protective language in those opinions, the *Barnes* decisions remain good law and are virtually indistinguishable from the current case. Accordingly, this court is bound by the *Barnes* decisions.

and Plaintiffs' filing of the complaint was within the one year statute of limitations.

Mobil's reliance upon the December 17, 1996, date is misplaced. In *Barnes v. Gulf Oil Corporation*, 824 F.2d 300, 303–04 (4th Cir.1987) (*"Barnes II"*), the Fourth Circuit rejected the notion that the assignee, in a franchise assignment that violates state law, becomes the franchisor. Therefore, Mobil remained the franchisor until June 30, 1998. Had Mobil's assignment not violated the franchise contract, thereby violating Maryland law, CIF could renew the contract on June 30, 1998, and the Plaintiffs would not have a cause of action. *See Beachler*, 112 F.3d at 906; *see also Barnes I*, 795 F.2d at 363–64. But, since a reasonable jury could find that Mobil's assignment violated state law, CIF's attempt to "renew" the franchise agreement in place of Mobil rises to the level of a "nonrenewal" within the meaning of the PMPA. *See Beachler*, 112 F.3d at 906 (when an assignment violates state law, the distributor [CIF] does not take the place of the franchisor [Mobil] and the distributor's attempt to "renew" the franchise rises to the level of a nonrenewal). As a result, "on the expiration date, stated in the relevant franchise" Mobil failed to renew its contract with the Plaintiffs. 15 U.S.C. § 2801(14)(A). Therefore, nonrenewal occurred on June 30, 1998, and the one year statute of limitations did not begin to run until that date. *See DuFresne's Auto Service, Inc. v. Shell Oil Co.*, 992 F.2d 920, 926–27 (9th Cir.1993) (stating that the one year limitations period begins to run as of the date that the franchise contract expires). Accordingly, Plaintiffs instituted this lawsuit within the statutory period and the Court will deny Mobil's summary judgment motion with respect to the Plaintiffs' PMPA claims.[2]

## II. Plaintiffs' Contract Claim

Plaintiffs third count contends that Mobil's assignment of the franchise to the unaffiliated CIF breached the 1995 Franchise Agreement. As discussed in addressing the Plaintiffs' PMPA claims, the 1995 Franchise Agreement is ambiguous. In addition, the extrinsic evidence submitted by Mobil, primarily the testimony of William Snead, provides insufficient clarification to justify a grant of summary judgment.

 Mobil also contends, however, that Plaintiffs' contract claim is barred by the one year limitations period set forth in the 1995 Franchise Agreement. The 1995 Franchise Agreement provides:

> *Notice of Claims* . . . . Notwithstanding notice by Dealer to Mobil, any claim by Dealer shall be waived and barred unless asserted by the commencement of a lawsuit in a court of competent jurisdiction within 12 months after the event, action or inaction to which such claim relates.

1995 Franchise Agreement, p. 18. Unlike Plaintiffs' PMPA claims, which stem from the June 30, 1998, nonrenewal of the franchise agreement, Plaintiffs' contract claim arises directly from the December 17, 1996, assignment. Since the Plaintiffs did not file this action until June 24, 1998, their contract claim falls outside the one year limitations period set forth in the contract, and is therefore untimely.

Plaintiffs contend, however, that the contractual limitations period violates section 2805(f) of the PMPA, and is therefore void. Section 2805(f) provides:

> (1) No Franchisor shall require, as a condition of entering into or renewing the franchise relationship, a franchisee to release or waive—
>
> > (A) any right that the franchisee has under this title or other Federal law; or

---

2. Since the court finds that the Plaintiffs brought this suit within one year of the nonrenewal date, it need not address Plaintiffs' alternative argument that Mobil's failure to give notice constitutes a continuing violation, thereby making the action timely under section 2805(a)(2).

(B) any right that the franchisee may have under any valid and applicable State law.

15 U.S.C. § 2805(f)(1). Here, Plaintiffs contend that the contractual limitations period violates the four year statute of limitations period established by Maryland UCC law. *See* Md.Code Ann., [Comm. Law I] § 2–725(1) (1997). But, the UCC expressly authorizes the parties to reduce the limitations period to not less than one year. *See id.* Therefore, Mobil did not require the Plaintiffs to waive any right held under Maryland law.

Plaintiffs also contend that the contractual limitation violates Maryland procedural law, for claims not governed by the UCC, which provides a three year limitations period. *See* Md.Code Ann., [Cts. & Jud. Proc.] § 5–101 (1997). But, when a contract involves a mixture of goods and non-goods, Maryland looks to the "predominant purpose" of the contract to determine whether the UCC applies. *See Burton v. Artery Company, Inc.,* 279 Md. 94, 108–09, 114, 367 A.2d 935 (1977) (*citing Bonebrake v. Cox,* 499 F.2d 951, 960 (8th Cir.1974)); *DeGroft v. Lancaster Silo Co.,* 72 Md.App. 154, 167–68, 527 A.2d 1316 (1987). While the 1995 Franchise Agreement does involve an underlying lease of real estate, the predominant purpose of the agreement is to govern the sale of Mobil's oil products. As a result, the UCC provisions apply to the entire contract and the parties may reduce the limitations period to one year. *See Burton,* 279 Md. at 114–15, 367 A.2d 935. Since the Plaintiffs filed their complaint more than one year after the alleged breach of the 1995 Franchise Agreement, their contract claim is barred by the limitations period set forth in that agreement. Accordingly, the Court will grant Mobil's motion for summary judgment with respect to Count III.

## III. Plaintiffs' Constructive Trust Claim

In Count IV of the Plaintiffs' complaint, they contend that Defendants CIF and HJR acquired their respective interests in the Marketing Premises under circumstances rendering it inequitable for them to retain such interests. Plaintiffs ask this court to impose a constructive trust on the Marketing Premises. They also ask the Court to require CIF and HJR to divest their interests in the premises.

Defendants CIF and HJR, citing cases outside of Maryland, contend that a " 'constructive trust,' while an equitable remedy, is not a cause of action and therefore cannot provide an independent basis for a claim...." CIF and HJR's Summ. J. Mot., p. 7. But, on at least three occasions, Maryland courts have analyzed a plaintiff's constructive trust claim without acknowledging any other cause of action raised by the plaintiff. *See Wimmer v. Wimmer,* 287 Md. 663, 414 A.2d 1254 (1980); *Springer v. Springer,* 144 Md. 465, 125 A. 162 (1924); *Starleper v. Hamilton,* 106 Md.App. 632, 666 A.2d 867 (1995). These cases suggest a willingness on the part of Maryland courts to impose a constructive trust even when the plaintiff has failed to assert a separate cause of action.

The *Starleper* case is especially instructive. In that case, the Maryland Court of Special Appeals held that a court may impose a constructive trust even absent any wrongdoing by the defendant. 106 Md.App. at 640, 666 A.2d 867. A court need only determine which party has "a sufficiently higher equitable call" to the property. *Id.* It is difficult to imagine any independent cause of action that would not involve an allegation of wrongdoing. Therefore, imposing an independent claim requirement would contradict the *Starleper* Court's willingness to allow a constructive trust even absent a finding of wrongdoing.

CIF and HJR also claim that, under the circumstances of this case, the imposition of a constructive trust would be inappropriate. Under Maryland law, a constructive trust is an "extraordinary remedy." *Id.* at 638, 666 A.2d 867. CIF

and HJR contend that this remedy is inappropriate here because Mobil, the alleged wrongdoer, remains a party to this action. According to CIF and HJR, money damages would sufficiently compensate the Plaintiffs for the loss of their franchise. Given Plaintiffs' interest in continuing a franchise that Korangy has operated since 1991, however, this Court is unable, at the summary judgment stage, to hold that the Plaintiffs could not have "a sufficiently higher equitable call" to the Marketing Premises. Accordingly, the Court will deny the motion by CIF and HJR for summary judgment.[3]

---

**3.** CIF and HJR also ask the Court to require Plaintiffs to pay $871,000 for the property. Since such a holding would not be dispositive of any issue in this case, however, but more accurately reflects a damage determination, the Court declines to address this issue on summary judgment.